[No. B107519. Second Dist., Div. Four. Sept. 23, 1997.]

DENISE S. SERAFIN, Plaintiff and Appellant, v.
FIRST INTERSTATE BANK, Defendant and Respondent.

## COUNSEL

Foley, Bezek & Komoroske, Peter J. Bezek and Frances E. Komoroske for Plaintiff and Appellant.

Munger, Tolles & Olson, Ronald K. Meyer and Marsha Hymanson for Defendant and Respondent.

## OPINION

## VOGEL (C. S.), P. J.—

### INTRODUCTION

In this lawsuit plaintiff Denise S. Serafin (Serafin) alleges that defendant First Interstate Bank of California (Bank) violated the duties imposed upon it by statute when a homeowner pays off an obligation evidenced by a deed of trust. In particular, she claims that Bank, in its capacity as beneficiary of the deed of trust, violated its duty to deliver the reconveyance documents to the trustee when the loan was paid off and that Bank, in its capacity as trustee of the deed of trust, violated its duty to record the reconveyance. The trial court granted summary judgment to Bank. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1993, Serafin obtained a $5,700 line of credit from Bank secured by a deed of trust on her home in Fullerton, California. Pursuant to the trust

deed, Serafin was the trustor and, as is often the practice with institutional lenders, Bank, through different departments, fulfilled two capacities: beneficiary and trustee.

On September 3, 1993, Bank received a request for a demand in regard to paying off Serafin's obligation.[1] This request, however, was destroyed *prior* to the commencement of this lawsuit pursuant to Bank's standard retention procedures. (See fn. 6, *post.*) Nonetheless, the existence of this request is proven by a document Bank generated on September 3, 1993, and entitled: "Demand (Beneficiary's Statement)." The document is addressed to Gateway Title Company in Orange, California, directed to the attention of "Sunday," gives a specific escrow number, lists Serafin as the borrower, and recites as the property address Serafin's Fullerton home. The document states: "*In accordance with your request*, we submit our demand and will forward to you a delayed full reconveyance *to be recorded* upon receipt of funds and fees listed below." (Italics added.) Furthermore evidence of the fact that on September 3, 1993, Serafin submitted a request for a demand is found in a copy of a report generated by Bank's computerized loan accounting system.

On September 27, 1993, Serafin paid the loan off.

On October 14, 1993, Bank's direct loan center, functioning as beneficiary of the trust deed, generated a document entitled "Instructions for Issuing Reconveyances." On October 15, 1993, this document was sent to Bank's trust deed reconveyance department which functioned as trustee of the trust deed. Enclosed with the document were: (1) the April 1993 note executed by Serafin, which Bank had now stamped "Paid" on September 27, 1993; (2) the April 1993 trust deed; (3) a request for full reconveyance signed by an employee of Bank, Debby Wirstlin (Wirstlin); and (4) a $65 check for the reconveyance fee. The document included the following directions:

"You are requested to issue full reconveyance of above trust deed and forward to:

Attention: Sunday
Gateway Title Company
2100 West Orangewood Ave. 100
Orange CA. 92668

---

[1]The parties' briefs do not explain the context in which the payoff occurred (e.g., sale by Serafin of the home encumbered by the trust deed or simply a decision by Serafin to pay off the liability) although one portion of the record suggests that the loan was paid off in the context of a refinance.

"Please complete the reconveyance for mailing after recording to:
Denise Serafin
218 S. Ventura Pl[.]
Fullerton, CA 92633."

Bank's trust deed reconveyance department received the above on October 18, 1993. On October 22, 1993, that department mailed the reconveyance to Sunday at the Gateway Title Company. For reasons not explained in the present record, the reconveyance was not recorded.

On June 3, 1994, Serafin and other named individuals commenced suit as representatives of a class allegedly injured by the practice of various defendants, including Bank, of collecting reconveyance fees but not recording the reconveyances in a timely manner. On June 16, 1994, Bank, through its employee Wirstlin, executed another full reconveyance in favor of Serafin. On June 27, 1994, pursuant to the request of Gateway Title Company, that document was recorded.

In regard to the class action, the parties agreed to sever the complaint into separate cases. Serafin then filed her own complaint. The operative pleading for purposes of this appeal is her fourth amended complaint. The complaint recites that it is a consumer class action and that Serafin is suing on behalf of herself and all others similarly situated and as a private attorney general on behalf of the general public. The first cause of action alleged statutory liability against Bank under Civil Code section 2941, subdivision (b)(1)[2] in Bank's capacity as beneficiary of the trust deed. The second cause of action alleged statutory liability against Bank under section 2941, subdivision (b)(1)(A) in its capacity as trustee of the trust deed. The third cause of action alleged liability for violation of Business and Professions Code section 17200 based upon Bank's purported violations of section 2941. In regard to money damages, Serafin did not plead that she had been damaged by Bank's alleged failures. Instead, she sought on behalf of herself and each member of the class the damages provided by statute: $300 for each violation of section 2941.[3] In regard to her unfair business practices claim, she sought an injunction to prohibit Bank from continuing to engage in the purported violations and disgorgement of all moneys "wrongfully obtained" by Bank. Lastly, she sought an award of attorney fees.

The trial court ultimately granted summary judgment to Bank. This appeal by Serafin follows.

---

[2]All subsequent statutory references are to the Civil Code unless stated otherwise.

[3]Statutory liability is created by subdivision (d) of section 2941 which provides: "The violation of this section shall make the violator liable to the person affected by the violation for all damages which that person may sustain by reason of the violation, and shall require that the violator forfeit to that person the sum of three hundred dollars ($300)."

DISCUSSION

1. *Liability for Failure to Deliver*

█ Serafin sought to impose liability upon Bank in its capacity as beneficiary of the trust deed based upon the assertion that Bank violated its statutory duty to deliver to the trustee the reconveyance request and the documents necessary to effectuate the reconveyance. She relied upon section 2941, subdivision (b)(1) which provides: "When the obligation secured by any deed of trust has been satisfied, the beneficiary or the assignee of the beneficiary shall execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust." Serafin's fourth amended complaint alleged: "[Bank] breached Civil Code section 2941(b)(1) by failing to deliver to the trustee *within sixty days* after satisfaction of the debt the necessary documents to reconvey or cause to be reconveyed the deeds of trust securing such debt." (Italics added.)

In this regard, the operative facts are undisputed. On September 27, 1993, Serafin paid off her loan. On October 15, 1993, Bank, acting in its capacity as beneficiary and through its direct loan center, sent all of the necessary documents to effectuate a reconveyance to the trustee, Bank's trust deed reconveyance department. On October 18, 1993, the trustee received the documents. Thus, 18 days after Serafin satisfied the obligation secured by the trust deed, the beneficiary sent the necessary documentation to the trustee, all of which was received 3 days later.

It is clear that based upon the allegations in the fourth amended complaint that Bank had a duty to deliver the necessary documentation in 60 days, the trial court properly granted Bank summary adjudication on this issue because the uncontradicted evidence established that Bank delivered the documentation in 18 days.

In order to avoid the force of this conclusion and draw this court into a lengthy debate about the meaning of the subdivision, Serafin now urges that she should not be bound by the allegations in her fourth amended complaint. She argues that she only amended her complaint to include those allegations because the trial court ordered her to do so. She therefore desires to now posit the issue as being whether the "when" in section 2941, subdivision (b)(1) means that Bank was required to deliver the reconveyance documents "as soon as" or "at the time" Serafin paid her loan off. There is no need for us to discuss or decide this issue because a careful reading of the record shows that Serafin *is* bound by the allegations in her fourth amended complaint and consequently cannot now shift theories.

Serafin's first amended complaint, filed in June 1995, alleged that Bank "[f]ail[ed] to prepare the necessary documents to reconvey or cause to be reconveyed the deeds of trust within the time frames specified in section 2941(b)(1) . . . ." Bank demurred, inter alia, on the basis that section 2941 imposed no time limit on the beneficiary vis-à-vis its duty to send reconveyance documents to the trustee. Serafin's opposition, drawing upon other time requirements in the statute, urged that the only reasonable interpretation of the statute was "that a beneficiary must, no later than 39 days from payoff of the loan, submit the documents to the trustee."

After hearing argument, the trial court sustained Bank's demurrer with leave to amend as follows: "Any claim against [Bank] as beneficiary under Civil Code § 2941(b)(1) must allege that [Bank] failed to deliver the documents required to be delivered under that section within a reasonable time, not to exceed sixty days, of satisfaction of the obligation secured by the deed of trust."

Thereafter, Serafin filed a second amended complaint using the language which she carried over into the pleading in effect at the time of the summary adjudication motion, her fourth amended complaint. As stated above, that language alleged a violation of section 2941, subdivision (b)(1) based upon a failure "to deliver within sixty days" after the loan was paid off. Significantly, although expressly given the option by the trial court to allege "a reasonable time period, not to exceed sixty days," Serafin chose to amend her pleading by utilizing the outside limit of 60 days. In a subsequent hearing, counsel for Serafin explicitly recognized this decision when he stated: "[T]he allegations in the complaint, Your Honor, are all based upon 60 days. We haven't even relied upon reasonable time, we've just said 60 days."

At the hearing on the summary judgment motion held *after* the trial court had granted Bank's motion for summary adjudication, Serafin raised *for the first time* the claim that Bank had an *immediate* duty to deliver the reconveyance documents. The trial court rejected Serafin's attempt to disavow the allegations of her fourth amended complaint. It stated: "Here's what seems to be happening. We wrestled with the question of when the beneficiary had to act and because it appeared the Legislature had omitted any specific time period, we said it would be a reasonable time, and then based on other provisions of the statute we said it would not exceed 60 days. I don't believe that's the way your amended complaint pleads it, though. Your amended complaint simply uses the hard and fast 60-day period, and I suspect that the plaintiffs did that so that you would have some option of certifying a class without going through a plaintiff-by-plaintiff analysis of what was a reasonable period of time . . . . So having chosen to develop a bright line for

presumably parameters of class certification, you then face a predicament here where there was only 18 days. You just can't have it both ways. . . . [Y]ou can't on the one hand strategically decide to exclude everything less than 60 days so you don't have to argue about it and then when they come in it's only 18 days, say . . . we want to revisit that issue. You have pled 60 days and you're going to have to live with it."

In light of this record, we find no merit to Serafin's present claim that she should not be bound by the allegations in the fourth amended complaint as to the time period in which Bank was obligated to deliver the reconveyance documents because she was compelled by judicial order to plead in that manner. For one thing, it is clear that following the hearing on the demurrer to the first amended complaint, she elected to plead a period of 60 days although the trial court had ruled that she could plead a reasonable time period, not to exceed 60 days. For another thing, at the time of the hearing, Serafin was *not* urging the position she now takes—that Bank had the duty to transfer the reconveyance documents the moment she satisfied the obligation—but instead was advocating the position that Bank had 39 days to transfer the documents. Serafin did not clearly and explicitly raise the argument of an immediate duty to deliver until after the trial court had granted Bank summary adjudication. Thus, contrary to what Serafin now suggests, it is apparent that she was not forced by the court to forsake alleging that the Bank had an immediate duty to transfer the documents and to instead allege a duty to act within 60 days. Having made the decision in the trial court to allege a 60-day period—an allegation which defined the issues to be considered in Bank's summary adjudication motion—Serafin may not now change her position on appeal. We therefore do not address her new arguments that section 2941, subdivision (b)(1) imposes an immediate duty upon Bank, as beneficiary of the deed of trust, to deliver the reconveyance documents.

### 2. *Liability for Failure to Record*

■ Serafin sought to impose liability upon Bank in its capacity as trustee based upon the assertion that Bank violated its statutory duty to record the reconveyance. She relied upon section 2941, subdivision (b)(1)(A) which provides: "The trustee shall execute the full reconveyance and shall record or cause it to be recorded, *except as provided in subdivision (c)*, in the office of the county recorder in which the deed of trust is recorded within 21 calendar days after receipt by the trustee of the original note, deed of trust, request for a full reconveyance, the fee that may be charged pursuant to subdivision (e), recorder's fees, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust." Essentially, Serafin

claimed that Bank, in its capacity as trustee, had all the necessary documents in its possession by October 18, 1993, but that it failed to have the reconveyance recorded within the required 21 days.

In granting Bank summary adjudication on this issue, the trial court found that subdivision (c) of section 2941 excepted Bank from its statutory duty to record the reconveyance. Subdivision (c) recites: "The mortgagee or trustee shall not record or cause the . . . full reconveyance to be recorded when any of the following circumstances exist . . . ." The trial court relied upon two exceptions. The first is when "[t]he mortgagee or trustee has received written instructions to the contrary from the mortgagor or trustor, or the owner of the land, as the case may be, or from the owner of the obligation secured by the deed of trust or his or her agent, or escrow." We need not and do not decide the applicability of this exception because we find, as will be explained, that the italicized portion of the second exception, which we now quote, controls this particular situation. That exception occurs when "[t]he certificate of discharge or *full reconveyance is to be delivered to the* mortgagor or *trustor*, or the owner of the land, as the case may be, *through an escrow to which the* mortgagor, *trustor*, or owner *is a party*." (Italics added.)

The evidence presented by Bank in support of its summary adjudication motion established the following. Prior to September 3, 1993, Serafin sent a request for a payoff to Bank. Bank, in its capacity as beneficiary of the trust deed, responded by sending, on September 3, 1993, a demand to Gateway Title Company explaining the amount Serafin would have to pay. The demand letter gave an escrow number and identified Serafin as the borrower. The demand further explained that Bank would send a reconveyance to Gateway Title Company "*to be recorded* upon receipt of funds and fees listed . . . ." (Italics added.) On October 14, 1993, after Serafin had made the required payment, Bank's direct loan center, in its capacity as beneficiary of the trust deed, sent all of the pertinent documents to Bank's trust deed reconveyance department (the trustee of the trust deed) and instructed it first to issue a full reconveyance and then to forward that reconveyance to Gateway Title Company. The trustee received all of these documents within four days.

Taken together, the above facts established that Gateway Title Company requested Bank to forward a reconveyance of Serafin's trust deed to it for recording through escrow.[4] Bank, as beneficiary, complied with that direction on October 14, 1993, when it sent the pertinent documents to the trustee

---

[4]Serafin has never really maintained that there was no escrow and in fact could not do so given the allegation in her complaint that Bank required that an escrow be used as part of the payoff transaction. Apparently, the escrow functions were performed by SC Funding.

and instructed it first to issue the full reconveyance and then to forward it to Gateway Title Company. Bank, as trustee, complied with that direction when it mailed the reconveyance to Gateway Title Company on October 22, 1993. Consequently, the trustee (Bank's trust deed reconveyance unit) was not required to record the reconveyance because "[t]he certificate of . . . full reconveyance [was] to be delivered to the . . . trustor . . . through an escrow to which the . . . trustor . . . [was] a party." (§ 2941, subd. (c)(2).)[5]

Serafin advances several factual and legal arguments to defeat this conclusion, none of which has merit. We first address the factual arguments.

Serafin urges that there is no evidence that any escrow instructed the Bank to forward the reconveyance to it. She relies upon the fact that Bank was unable to produce the initial demand request it received because it had destroyed that document prior to commencement of litigation. Serafin argues: "The Bank's failure to produce this key document leads to one irrefutable conclusion: The Bank never received such a written request from escrow. At the very least, the existence and content of such a document are disputed issues of fact central to the trial court's ruling." The argument fails.

Bank established through competent evidence (Wirstlin's declaration) the reason for the absence of the document,[6] a showing which Serafin offered no evidence to contradict. In any event, the argument is, at best, disingenuous. Is Serafin seriously urging that a request for a demand letter was never sent to Bank? Hardly, given that the fulcrum of her claim is that Bank failed to follow the statutory procedures after she received the demand letter and paid off her loan. None of these events would have occurred had she not set them in motion by requesting a demand letter. In any event, the evidence established that a request for a demand letter had been sent. For one thing, the September 3 communication from Bank to Gateway Title Company begins:

---

[5]If, as it appears, that Serafin paid off the loan in the context of refinancing (see fn. 1, *ante*), our conclusion is consistent with the general rule that in a refinance situation, the trustee's obligation is to execute the reconveyance and have it deposited in an escrow for recordation upon close of escrow. (*Trustors Security Service* v. *Title Recon Tracking Service* (1996) 49 Cal.App.4th 592, 596 [56 Cal.Rptr.2d 793].)

[6]Wirstlin's declaration averred: "The actual Request for Demand relating to the Serafin Advanceline is no longer in existence, as this class of document was disposed of prior to the commencement of this litigation pursuant to [Bank's] standard document retention procedures. A search of [Bank's] records was conducted to locate the Serafin Request for Demand, but because of [Bank's] document retention procedures, it could not be located."

Additionally, Bank offered a declaration from its counsel who averred that through discovery she had attempted to obtain the request for demand letter from Gateway Title Company but was ultimately informed that the document could not be located. Counsel also sought discovery from SC Funding which had performed the escrow services in the transaction but it, too, was unable to locate the escrow file.

*"In accordance with your request,* we submit our demand" and Bank's computer records indicate that on September 3, 1993, it received a request for a demand letter from Gateway Title Company. (Italics added.) For another thing, several weeks later, Serafin paid the sum due. Thus, it is patently unreasonable to argue that Bank never received a written request from escrow.

In a similar vein, Serafin urges that there is no evidence that Bank was to deliver the reconveyance to Serafin through an escrow. We disagree. The October 14 communication from the beneficiary to the trustee directed the trustee "to issue full reconveyance . . . and forward to . . . Gateway Title Company . . . ." This shows that the trustee's obligation was limited to issuing the reconveyance and then forwarding that document to Gateway Title Company. Serafin attempts to argue a contrary inference by pointing to the following language in the communication: "Please complete the reconveyance for mailing after recording to: Denise Serafin[,] 218 S. Ventura Pl[.,] Fullerton, CA 92633." Serafin urges that this language indicates that the trustee was to record the reconveyance. Not so. The language is nothing more than an instruction to the trustee to insert Serafin's name and home address in the upper left hand corner of the document entitled "Full Reconveyance" after the phrase "And when recorded mail to." That is, the phrase simply directs the trustee to insert the name and address of the trustor so that *after the reconveyance has been recorded,* it can be mailed to the trustor at the designated address. The phrase does *not* direct the trustee to record the reconveyance.

Lastly, Serafin attempts to make much out of the fact that after she filed this lawsuit, a reconveyance was recorded in June 1994. She raises the following rhetorical question: "If the Bank had no duty to issue and record that reconveyance . . . then why did it so promptly reconvey four days after it was served with the complaint in this action?" This question ignores the explanation given by Wirstlin, the individual who signed the June 1994 reconveyance, in her declaration. Wirstlin averred: "Serafin's Complaint notified [Bank] that the reconveyance [Bank] had previously prepared in Fall, 1993, *for recording by Gateway Title* had not been recorded. I prepared the new reconveyance in light of the allegations in Serafin's Complaint that a reconveyance of her deed of trust had not yet been recorded. This new reconveyance has nothing to do with the documents prepared by [Bank] in Fall, 1993, at the time of pay-off of Serafin's loan, by which Bank issued a reconveyance and *sent the reconveyance to Gateway Title for recording.*" (Italics added.) Furthermore, the upper left-hand corner of the reconveyance recites: "Recording Requested by Gateway Title Company." This shows that Bank, as trustee, had no obligation to record because it had always been

intended that the reconveyance would be delivered to Serafin through an escrow which would, in turn, record it.

Lastly, we turn to Serafin's legal argument that the trial court erred in finding that the exception found in section 2941, subdivision (c)(2) applied to this case. She urges that this exception requires *personal* delivery to her of an *unrecorded* reconveyance so that she could then decide whether or not to record the document. The argument is borderline frivolous. For one thing, nothing in the language of subdivision (c)(2) even hints at *personal* delivery of the reconveyance. Serafin is attempting to engraft upon that subdivision language found in subdivision (c)(3).[7] The attempt must fail, for whatever the merits of imposing such a requirement, the point is that the Legislature did not include it in subdivision (c)(2). Furthermore, nothing in the language of subdivision (c)(2) indicates that its purpose is to give the trustor the personal option of deciding whether or not to record the reconveyance. Serafin's effort to find support for such a purpose in the statute's legislative history fails. All she can point to is language taken out of context from a letter written by the California Real Estate Association expressing its opinion about including possible exceptions to the duty to record in a bill which was then pending in the state Legislature. This hardly constitutes a persuasive argument. Enough said.

### 3. *Statute of Limitations*

Serafin contends that the trial court adopted a one-year statute of limitations for claims alleging violations of section 2941 and that the correct limitations period is three years. She therefore urges us to address this claim. The problem with her position is that the ruling was made prior to the summary adjudication litigation when the action was framed in the context of a class action. Because Bank never urged that Serafin's claim was time-barred,[8] none of the contested rulings in the summary adjudication involves the statute of limitations. Nonetheless, Serafin urges: "[T]his case began as a class action; if the judgment below is reversed, the case will proceed to class certification, and the issue of who belongs in that class will

---

[7]Subdivision (c)(3) of section 2941 provides: "The mortgagee or trustee shall not record or cause the certificate of discharge or full reconveyance to be recorded when any of the following circumstances exists: [¶] . . . [¶] (3) *When the personal delivery* is not for the purpose of causing recordation and when the certificate of discharge or *full reconveyance is to be personally delivered* with receipt acknowledged by the mortgagor or trustor or owner of the land, as the case may be, or their agent if authorized by mortgagor or trustor or owner of the land." (Italics added.)

[8]In light of the facts that Serafin's loan was paid off in September 1993 and that Serafin filed suit nine months later in June 1994, Bank essentially concedes that it could not argue that her claim was time-barred.

obviously have to be decided. The trial court early on in these proceedings ruled that a one-year statute applies to section 2941 violations, thereby eliminating some named plaintiffs in the related actions and severely restricting the size of the potential classes in all of these cases. . . . [¶] . . . [B]oth the parties and the trial court will greatly benefit by this Court's guidance as to which statute of limitations should be applied in this case and in the ongoing related cases. Thus, for these reasons, this court is respectfully requested to decide whether the trial court applied the correct statute of limitations." We decline this invitation.

### 4. Business and Professions Code Section 17200

After the trial court granted Bank summary adjudication on the issues of violation of section 2941, Bank moved for summary adjudication on the remaining claim of violation of Business and Professions Code section 17200. Bank noted that Serafin had failed to offer any evidence to support that claim other than that already considered and rejected by the court in regard to her personal transaction. Bank urged that because Serafin had no claim of her own under section 2941, she could not assert a claim on behalf of a class. Serafin filed a response conceding that Bank's position was correct, assuming that the trial court's earlier rulings were correct. The court granted the motion and ultimately entered summary judgment on the complaint in Bank's favor.

On this appeal, Serafin does not seek review of the ruling granting Bank summary adjudication on the claim of violation of Business and Professions Code section 17200. There is, therefore, nothing to discuss in this regard.

### DISPOSITION

The judgment is affirmed.

Hastings, J., and Baron, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 17, 1997.