[No. G020529. Fourth Dist., Div. Three. June 19, 2000.]

JO-ANN BARTOLD et al., Plaintiffs and Appellants, v.
GLENDALE FEDERAL BANK et al., Defendants and Appellants.

[No. G021899. Fourth Dist., Div. Three. June 19, 2000.]

CHARLES COHEN et al., Plaintiffs and Appellants, v.
GLENDALE FEDERAL BANK et al., Defendants and Appellants.

**COUNSEL**

Law Offices of Jeffrey F. Keller, Jeffrey F. Keller; Kaufman, Malchman, Kirby & Squire, Alice McInerney, James P. Carroll Jr., Hall; Patterson & Charne, Patrick O. Patterson, Gretchen E. Miller and Andrea Bierstein for Plaintiffs and Appellants.

Lewis, D'Amato, Brisbois & Bisgaard, Randall L. Mason, James E. Friedhofer, and Ernest Slome for Defendants and Appellants.

**OPINION**

**SILLS, P. J.**—These two appeals arise out of an action by four individual plaintiffs, Jo-Ann Bartold, Kurt Krasne, Dov Hopenstand and Charles Cohen, against Glendale Federal Bank and Verdugo Service Corporation for failure to reconvey their trust deeds as required by Civil Code section 2941. The first appeal, by Bartold, Krasne and Hopenstand, is from the trial court's denial of the plaintiffs' motion to certify a class action; the second is from the summary judgment granted against two of the individual plaintiffs, Cohen and Hopenstand, and for denial of discovery on class issues. The action continues on behalf of the two remaining individual plaintiffs, Bartold

and Krasne.[1] Upon reconsideration of appellants' motion to consolidate these two cases, twice denied by this court without prejudice, we consolidate the cases and issue one opinion.

We find the trial court erred in refusing to certify the class, should have allowed discovery on class issues, and erroneously granted summary judgment against Cohen and Hopenstand. Accordingly, we reverse both judgments.

## STATUTORY BACKGROUND

Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan. The deed of trust is recorded to give notice to future lenders and purchasers that the property is encumbered by an outstanding loan. Legal title to the property is held by a trustee until the loan is repaid in full. When the beneficiary receives full repayment, it is obligated to execute a request for reconveyance and deliver it to the trustee, who is then obligated to record a full reconveyance within 21 days (unless it receives contrary instructions from the trustor or his escrow), thereby delivering clear title back to the property owner.

Civil Code section 2941 sets out these requirements and provides that if the trustee has not recorded the reconveyance within 75 days of repayment, a title insurance company "may prepare and record a release of the obligation," demonstrating satisfaction of the loan. The statute imposes a $300 penalty on one who fails to fulfill the statutory requirements.[2]

---

[1]Bartold and Krasne are left with only their cause of action against Glendale and Verdugo for breach of contract for charging a reconveyance fee.

[2]Civil Code section 2941 provides, in part: "(b)(1)When the obligation secured by any deed of trust has been satisfied, the beneficiary or the assignee of the beneficiary shall execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and such other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust. [¶] (A) The trustee shall execute the full reconveyance and shall record or cause it to be recorded, except as provided in subdivision (c), in the office of the county recorder . . . within 21 calendar days after receipt by the trustee of the original note, deed of trust, request for a full reconveyance, the fee that may be charged pursuant to subdivision (e), recorder's fees, and such other documents as may be necessary to reconvey . . . . [¶] . . . [¶] (2) If the trustee has failed to execute and record, or cause to be recorded, the full reconveyance within 60 calendar days of satisfaction of the obligation, the beneficiary, upon receipt of a written request by the trustor . . . , shall . . . substit[ute] itself or another as trustee and issue a full reconveyance. [¶] (3) If a full reconveyance has not been executed and recorded . . . within 75 calendar days of satisfaction of the obligation, then a title insurance company may prepare

In *Trustors Security Service v. Title Recon Tracking Service* (1996) 49 Cal.App.4th 592 [56 Cal.Rptr.2d 793], the court summarized the context in which Civil Code section 2941 was passed. "Historically, when a lender was paid in full the lender/beneficiary would send the necessary documentation and reconveyance fee to the trustee and request it to execute a reconveyance. If the debtor/trustor continued to own the property the trustee was directed to record the reconveyance in the county recorder's office. Alternatively, if the debtor/trustor had sold or refinanced the property, the trustee executed the reconveyance documents and generally deposited them into escrow for recordation upon close of escrow.

"Prior to 1989 there was no specified time period within which a reconveyance had to be recorded after full payment of the loan. Apparently, lenders were not particularly diligent in ensuring reconveyances were executed and recorded once their loans were satisfied despite civil penalties for failure to do so. [Citation.] The problem was apparently particularly acute with large commercial lenders with in-house trustee departments. [Citation.] As a result many property owners experienced problems selling and clearing title to their property. . . . [¶] Title insurers experienced problems of their own. During this period these companies employed staff [in some instances, up to 50 percent of their employees] for the sole purpose of confirming old loans appearing as liens against real property had in fact been paid off. . . . [¶] Consumers made numerous complaints to the Attorney General's office [leading to proposed changes to section 2941.] [¶] . . . In its current form, under section 2941 lenders and trustees are subject to both civil and criminal penalties for failing to comply with the statutory deadlines for effecting reconveyances." (49 Cal.App.4th at pp. 596-597.)

## FACTUAL BACKGROUND

Glendale Federal Bank, chartered as a federal savings and loan association, devotes a significant part of its business to originating, selling, purchasing and servicing residential loans. It handles loan payoffs and title reconveyances in all 50 states and Puerto Rico. Verdugo Service Corporation, a

and record a release of the obligation. . . . [¶] . . . [¶] (c) The . . . trustee shall not record or cause the . . . full reconveyance to be recorded when any of the following circumstances exists: [¶] (1) The . . . trustee has received written instructions to the contrary from . . . the trustor . . . or escrow. [¶] (2) The . . . full reconveyance is to be delivered to the . . . trustor . . . through an escrow to which the . . . trustor . . . is a party. [¶] (3) When the personal delivery is not for the purpose of causing recordation and when the . . . full reconveyance is to be personally delivered with receipt acknowledged by the . . . trustor . . . . [¶] (d) The violation [of any provision] of this section shall make the violator liable to the person affected by the violation for all damages which that person may sustain by reason of the violation, and shall require that the violator forfeit to that person the sum of three hundred dollars. . . ."

wholly owned subsidiary of Glendale, performs real estate trustee services for Glendale.

Bartold, Cohen and Krasne executed deeds of trust identifying Glendale as the lender/beneficiary and Verdugo as the trustee when they borrowed money to purchase or refinance their homes. Hopenstand's loan was from another lender, but Glendale later became his loan servicer. All four plaintiffs refinanced their homes and paid off their loans to Glendale; all but Hopenstand paid Glendale a reconveyance fee. In each case, Verdugo failed to record à reconveyance of the trust deed and the title company handling the refinance transaction was required to record a release of the obligation to clear title.

The plaintiffs filed their second amended complaint against Glendale and Verdugo in February 1996, alleging the foregoing facts and claiming violations of Civil Code section 2941, the Unfair Business Practices Act (Bus. & Prof. Code, § 17200 et seq.), breach of contract, and fraud on behalf of themselves and those similarly situated, both in California and nationwide. On behalf of the California class,[3] plaintiffs alleged that Glendale, as beneficiary, failed to deliver the necessary reconveyance documents to Verdugo when class members' loans were satisfied, and that Verdugo, as trustee, failed to record full reconveyances for the class members within 21 days after receipt of the necessary documents. They alleged that Glendale engaged in a general business practice of promising to provide reconveyance services upon payoff, with no intention of performing such services in a timely manner. Instead, Glendale's standard business practice was "to fail to record within a reasonable time period, if at all, . . . reconveyances . . . result[ing] . . . in the wrongful clouding of thousands of homeowners' titles." Plaintiffs alleged each class member's entitlement to the statutory penalty of $300, restitution of any reconveyance fees paid, and punitive damages for defendants' breach of duties under Civil Code section 2941.

In March 1996, plaintiffs moved to compel the production of documents relating to reconveyance services provided by defendants, defendants' practice of charging reconveyance fees, defendants' knowledge of their breach of reconveyance duties, and the identification of the class members and class certification issues. The trial court denied the motion on the ground that each of the requests was "overbroad in scope for the litigation involving these parties and there has been no class action certification."

Thwarted by the denial of discovery, in July 1996, the plaintiffs filed their motion for class certification, proposing a California class "consisting of all

---

[3]The certification of the nationwide class was also denied, but plaintiffs do not appeal from that order.

persons who had borrowed money secured by a mortgage or deed of trust on real property and: [¶] (a) who repaid their loans after July 1, 1989, within California, at which time [Glendale and Verdugo], through loan origination, purchase or servicing, held the position of beneficiary, assignee of the beneficiary, successor-in-interest, or, upon substitution or designation of itself, trustee, and [¶] (b) whose deeds of trust were not reconveyed in accordance with California Civil Code § 2941." The plaintiffs presented evidence that when Glendale is the beneficiary on a deed of trust, its practice and procedure is to wait until it receives the payoff on the underlying loan before processing the reconveyance documents, notwithstanding the typical escrow's request to send the executed request for reconveyance along with the demand statement, thereby enabling escrow to record it concurrently with the closing. When a loan originated by Glendale has been sold to an investor, but the assignment of the loan has not been publicly recorded, Glendale's practice is to retain "signing authority" as the beneficiary.

Defendants obtained a continuance of the class certification hearing until August 15, but on August 1, they asked the court for a longer continuance because they wanted the motion heard with their planned summary judgment motion. They also asked for relief from the limit on the number of pages permissible in their opposition to the class certification. Both requests were denied. On August 6, defendants filed their motion for summary judgment with 450 pages of supporting documents. The next day, defendants filed their opposition to the class certification motion, incorporating by reference their points and authorities and supporting documentation from the summary judgment motion. Plaintiffs objected to the incorporation by reference because it violated the page limitation and improperly injected the merits of the action into the class certification proceedings. The trial court did not address this objection.[4]

The substance of defendants' opposition to the certification motion was contained in declarations of Sherrie Kane, the supervisor of Glendale's Payoff Department, in which she claimed Glendale was neither the beneficiary nor the assignee of the beneficiary for each of the individual plaintiffs. Glendale was originally the beneficiary of Bartold's deed of trust, but it was assigned to Citimae and Glendale continued to act as the loan servicer. The loan was paid off on April 16, 1992. On May 8, Glendale requested the original note and accompanying documents from Citimae. Glendale received

---

[4] Glendale and Verdugo asked the trial court to judicially notice their summary judgment motion when filing their opposition to the motion to certify the class. Although there is nothing in the record indicating whether the trial court granted the request, the parties seem to assume it did, and so will we. The record in the appeal from the denial of class certification has been augmented to include the plaintiffs' opposition to the summary judgment, which was filed after the certification motion was denied.

the documents on June 24 and immediately executed and delivered the request for reconveyance to Verdugo. Verdugo executed the document on July 1 and mailed it to the title company handling the loan payoff on July 16. Escrow's title insurer recorded a release of obligation on July 21. Bartold paid a reconveyance fee to Glendale on Verdugo's behalf.

Glendale was never the beneficiary on Hopenstand's deed of trust; it was the loan servicer for the assignee of the beneficiary. Hopenstand's escrow instructed Glendale to forward the executed request for reconveyance to escrow on November 19, 1992; Glendale did not send the request for reconveyance to the trustee until after it received the loan payoff, on January 15, 1993. The executed request for reconveyance was not sent to escrow until March 26; escrow's title company recorded a release of obligation on April 28.

Cohen's loan was originally from Glendale. The loan was sold, but Glendale continued to act as loan servicer. Cohen's escrow instructed Glendale on August 3, 1992 to send the reconveyance documents to its title company. After payoff on October 7, 1992, Glendale executed the request for full reconveyance and sent it to Verdugo on October 16; Verdugo executed the full reconveyance on October 22 and sent the reconveyance to the title company, as requested, but sent it to the wrong office. It was ultimately sent to the correct office on June 14, 1993; the release of obligation was recorded in January 1993.

Glendale was the original beneficiary for Krasne's deed of trust and continued as loan servicer after it was sold to First Boston Mortgage. On September 4, 1992, Krasne's escrow instructed Glendale to send the request for reconveyance to its title company. After payoff, on November 3, 1992, Glendale requested the original note and deed of trust from First Boston's custodian, which could not locate them. Glendale had to document the loss and prepare a new request for reconveyance and finally got the request to Verdugo on December 17, 1993. Verdugo sent the full reconveyance to the title company on December 30, 1993. The title company recorded a release of obligation on March 8, 1993. Glendale collected a $65 reconveyance fee on behalf of Verdugo.

Kane declared that Glendale followed "[t]he custom and practice in the industry throughout California" and delivered documents on a delayed re-conveyance basis. "This simply means that the funds are distributed to pay off the old lender at the time the new loan is being recorded (when the new loan is 'closed'). Thereafter, the old lender provides a full reconveyance to the title company to enable the title/title insurance company to record the

full reconveyance." Kane explained it was necessary for the title company who was insuring the new lender to retain control over the transaction "to meet the requirements of the new lender and ensure that the new lender is shown as the senior lien and that the old lien . . . has been extinguished and removed from the title."

At the hearing on August 15, the trial court considered certification of both the nationwide and the California classes. It expressed its concern that "the sameness of the facts and the sameness of the damages to the . . . recipients I think is missing in this case," focusing primarily on the different language in each trust deed in the proposed nationwide class. After responding to the trial court's questions about the nationwide class, plaintiffs turned to the California class, arguing that Glendale and Verdugo had the same statutory duty to reconvey to all proposed members, and all members would have suffered from Glendale and Verdugo's statutory violations. Defendants countered that the statute only applies to the beneficiary or the assignee of the beneficiary, and asserted that Glendale was neither for each of the four named plaintiffs. "We would have to look at every one of the California persons [to whom Glendale failed to reconvey] and find out whether Glendale was or was not the beneficiary or the assignee of the beneficiary . . . ." The trial court asked plaintiffs if they wished to address the beneficiary issue. Counsel replied, "[I]ndeed we did in our papers . . . ." The trial court denied certification of both classes "for the reasons stated."

In October, plaintiffs took the deposition of Sherrie Kane and sought to take the depositions of the entities defendants named in their summary judgment motion as the true beneficiaries or assignees of plaintiffs' deeds of trust. The discovery referee quashed the deposition subpoenas on defendants' motion, and added, "[T]here will be no further attempt to take the deposition of either Boston Mortgage Capital Corp. or Firstar Trust until after the determination of the summary [judgment] motion now set for November 1996 . . . ."

The trial court granted summary judgment against Cohen and Hopenstand on all causes of action; they appeal the adverse rulings on four of them.[5] The court found that Civil Code section 2941 did not apply to Glendale because it was not the beneficiary or assignee and it did not apply to Verdugo as trustee because it was excused by subdivision (c) relating to instructions from escrow. The causes of action for unfair business practices and fraud failed because they were based on violations of section 2941.

---

[5]Summary adjudication was entered against Bartold and Krasne on all but one cause of action.

## I. *Inclusion of Summary Judgment Papers in Defendants'*
### *Opposition to Class Certification*

Plaintiffs complain they were deprived of due process because the class certification hearing was decided adversely to them based on defendants' unrebutted summary judgment papers. They point out that the summary judgment motion was based on the second declaration of Sherrie Kane and raised, for the first time, the defense that Glendale was not the beneficiary on any of plaintiffs' trust deeds. After the class certification was denied, plaintiffs took the deposition of Kane, during which she allegedly contradicted her declaration and admitted that Glendale acted as beneficiary for loans it serviced. Thus, plaintiffs argue, denial of the class certification was based on untrue factual assertions. Relying on *Carabini v. Superior Court* (1994) 26 Cal.App.4th 239 [31 Cal.Rptr.2d 520], they claim they were denied an opportunity to conduct discovery, present evidence and brief the issues before the certification hearing.

In *Carabini*, this court granted writ relief overturning the trial court order certifying a class action. The plaintiffs had filed and properly noticed a motion for class certification, but the parties subsequently agreed to take it off calendar pending the resolution of a motion to disqualify the trial judge. Some months later, after the disqualification request was resolved, the parties appeared for an evaluation conference. The trial judge asked about the status of the class certification motion, and, when advised the parties had taken it off calendar, he granted it immediately to avoid further delays. The defendants sought relief from this court, complaining they did not have proper notice that the class certification motion would be considered at the evaluation conference and thus had no opportunity to file their opposition.

We acknowledged the significance of the class certification decision, in that it "frequently determines whether the case has continuing viability." Accordingly, we held that due process requires "an opportunity to conduct discovery on class action issues before . . . documents in support of or in opposition to the motion must be filed," and "a full opportunity to brief the issues and present evidence." (*Carabini v. Superior Court, supra,* 26 Cal.App.4th at pp. 243-244.)

In *Carabini*, the defendants lacked an opportunity to conduct discovery to support their opposition before the certification motion was granted. But plaintiffs here could have controlled the timing of the motion. While they complained in their reply papers that "reliance on a newly filed summary judgment motion is inherently unfair" and asked that "all references to it should be stricken and disregarded," they never asked for a continuance of the motion to take Kane's deposition and offer no reason why they did not

merely take the motion off calendar. Further, after acquiring the newly-discovered evidence, they failed to ask for reconsideration under Code of Civil Procedure section 1008, subdivision (b). Because plaintiffs did not take advantage of opportunities to avoid in the trial court the problem about which they now complain on appeal, they have waived any claim of a due process violation.

## II. *Denial of Class Certification*

Before a class action can be maintained, the named plaintiffs must show "the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23]; Code Civ. Proc., § 382.) A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. "Thus, whether there is an ascertainable class depends in turn upon the community of interest among the class members in the questions of law and fact involved." (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 706 [63 Cal.Rptr. 724, 433 P.2d 732].) It follows that a judgment in a class action "will be res judicata as to all persons to whom the common questions of law and fact pertain." (*Ibid.*)

Here, the class is described as those who suffered violations of Civil Code section 2941 by Glendale and/or Verdugo after July 1, 1989. The common questions with respect to each member are: (1) Did Glendale act as the beneficiary and/or did Verdugo act as the trustee under section 2941? (2) Did Glendale and/or Verdugo fail to perform their statutory duties in a timely manner? (3) Is Verdugo excused from performance under the statute by subdivision (c)?

The appeal of an order denying class certification presents an exception to the general rule that a reviewing court will look to the trial court's result, not its rationale. If the trial court failed to follow the correct legal analysis when deciding whether to certify a class action, "an appellate court is required to reverse an order denying class certification . . . , 'even though there may be substantial evidence to support the court's order.'" (*National Solar Equipment Owners' Assn., Inc. v. Grumman Corp.* (1991) 235 Cal.App.3d 1273, 1281 [1 Cal.Rptr.2d 325]; see also *Daniels v. Centennial*

*Group, Inc.* (1993) 16 Cal.App.4th 467, 474 [21 Cal.Rptr.2d 1]; *Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 612 [236 Cal.Rptr. 605].) In other words, we review only the reasons given by the trial court for denial of class certification, and ignore any other grounds that might support denial.

 The trial court denied the motion to certify both classes "for the reasons stated." A review of the transcript of the argument on the motion indicates the trial court was concerned about "the sameness of the facts." Many of these concerns go to the nationwide class, where the duty to reconvey comes from the language in each trust deed form. But plaintiffs did not appeal the denial of the nationwide class. For the California class, the common question is whether defendants failed to reconvey in accordance with the statute. Because the different trust deed forms do not affect this common question, the trial court's concerns about the varying language in the trust deeds were unfounded.

Although the record is less than definitive, the trial court apparently concluded that Glendale was not the beneficiary or assignee of the beneficiary at the time of payoff on any of the loans for the named plaintiffs, resulting in the proposed California class lacking representative plaintiffs with typical claims. Bartold, Krasne and Hopenstand[6] argue the trial court was incorrect. They assert their claims are typical of all proposed class members' claims because in each transaction, Glendale acted as the beneficiary or the agent of the beneficiary and Verdugo acted as the trustee in executing the reconveyance documents. In addition, in each of the plaintiffs' transactions, Glendale acted in conformity with its own established procedures, which also apply to all California homeowners.

 At a class certification hearing, the court should not make any determination of the merits or validity of the claim. (*Carabini v. Superior Court, supra,* 26 Cal.App.4th at p. 245.) But when the merits of the claim are enmeshed with class action requirements, the trial court must consider evidence bearing on the factual elements necessary to determine whether to certify the class. "When the trial court determines the propriety of class action treatment, 'the issue of community of interest is determined on the merits and the plaintiff must establish the community as a matter of fact.' [Citation.]" (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 656 [22 Cal.Rptr.2d 419].)

 A look at the facts before the trial court convinces us that Glendale was the beneficiary, within the meaning of the statute, at least with respect to Bartold and Krasne. Their original deeds of trust identified Glendale as the

---

[6]Plaintiff Cohen did not appeal from the denial of certification of the class.

beneficiary and Verdugo as the trustee. Although Glendale asserts it assigned both the Bartold and Krasne deeds of trust and was a mere loan servicer at the time of payoff, Glendale never recorded any assignment of the trust deeds and did not notify the homeowners. Unrecorded assignments are "valid as between the parties thereto and those who have notice thereof," but are not valid against other parties. (Civ. Code, § 1217; *Moore v. Schneider* (1925) 196 Cal. 380, 393-394 [238 P. 81]; see *Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356, 370 [262 Cal.Rptr. 630]; *First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1440-1441 [71 Cal.Rptr.2d 295].) If we allow Glendale to avoid the duties it assumed as beneficiary by executing a secret assignment, the goal of the statute—timely recordation of reconveyances—would be thwarted. The normal practice in a refinancing scenario is for the escrow agent to contact the beneficiary of record to start the sometimes tedious process of gathering the necessary documents. If Glendale is the beneficiary of record, it should be held to the commensurate responsibilities.

Furthermore, Glendale held itself out as the beneficiary, thereby putting no one involved in the transaction on notice that a further search for the real beneficiary needed to be made. For both homeowners, Glendale executed the requests for reconveyances as the beneficiary, and the releases of obligation filed for each homeowner identified Glendale as the beneficiary.[7]

Plaintiffs' allegations address a problem so widespread that the Legislature saw fit to enact a statutory penalty. "The obvious statutory purpose [of Civil Code section 2941, subdivision (b)] is to encourage prompt reconveyance by penalizing unwarranted delay." (*Dixon v. Grossman* (1972) 22 Cal.App.3d 941, 944 [99 Cal.Rptr. 659].) The legislative imposition of this civil penalty is virtually meaningless without the collective power of a class action. A multiplicity of actions dealing with the same basic issues would be necessary, resulting in multiple burdens on the plaintiffs, the defendants, and the courts. And it is unlikely many of the individual borrowers would recover, as the relatively small penalty makes separate actions economically unfeasible. (See *Daar v. Yellow Cab Co., supra*, 67 Cal.2d at pp. 714-715.) In

---

[7]For Hopenstand, Glendale was identified as the beneficiary by his escrow in its request for payoff demand letter, and Glendale provided the payoff demand statement and received Hopenstand's payoff check. But there is nothing in the record to indicate Glendale was ever the actual beneficiary on Hopenstand's loan. Rather, it became the loan servicer after the original beneficiary assigned the note to a third party. Hopenstand apparently feels that because Glendale never held a beneficial interest in the loan, it cannot be considered a beneficiary under Civil Code section 2941, because he concedes in the companion appeal from the summary judgment that the record does not show Glendale acting as his beneficiary. Because of Hopenstand's admission, we do not reach the question of whether a mere loan servicer can be *considered* a beneficiary under the statute, and we express no opinion on the subject.

short, absent a class action, lenders would be able to violate the statute with impunity.

### III. *Summary Judgment on the Merits*[8]

 The trial court granted summary judgment against Cohen and Hopenstand on all causes of action; they appeal the adverse rulings on four of them. The court found that Glendale was entitled to summary adjudication against Cohen on the cause of action for violation of Civil Code section 2941, "because Glendale caused the requirements of § 2941(b)(1) to be satisfied within a reasonable time (nine days) after Glendale received a check from Stewart Title to pay off the Cohen loan . . . . In addition, Glendale neither owed nor breached any of the statutory duties set forth in Civil Code § 2941(b)(1) because after Glendale sold and assigned the Cohen loan to Federal Home Loan Mortgage Corporation . . . [it] became the owner of the loan (i.e., the assignee of the beneficiary)."[9]

Cohen argues the evidence establishes as a matter of law that Glendale was the beneficiary of his trust deed for purposes of liability under Civil Code section 2941; he also argues the statute should not be interpreted as allowing the beneficiary a reasonable time to execute the request for reconveyance, but means immediately upon satisfaction of the obligation. We agree with both arguments and reverse Glendale's summary judgment against Cohen.

 We review a summary judgment de novo, exercising our independent judgment to decide the construction and effect of the facts presented to

---

[8]We are aware of cases holding that in a class action, substantive issues cannot be summarily adjudicated before the adjudication of procedural class action issues, including composition and notice. (*Home Sav. & Loan Assn. v. Superior Court* (1976) 54 Cal.App.3d 208, 213-214 [126 Cal.Rptr. 511]; *Home Sav. & Loan Assn. v. Superior Court* (1974) 42 Cal.App.3d 1006, 1013-1014 [117 Cal.Rptr. 485].) This rule is for the protection of the class action defendant, because "a defendant who litigates and loses issues tendered in a class action filed by an individual member of the class may be estopped in subsequent litigation with other members of the class to deny the validity and binding effect of the judgment against him in the first action. Contrariwise, if defendant prevails in the first cause of action involving merely individual members of the class, no other members of the class need be bound by the outcome, for they were not parties to the lawsuit and received no notification about it." (*Home Savings and Loan, supra,* 42 Cal.App.3d at p. 1011.) Here, however, Glendale and Verdugo brought the summary judgment motion, knowing the class certification issue was not final, and raised no objection in this court to a decision on the merits of the summary judgment. Under these circumstances, any right they may have had to complain has been waived. (See *Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 263 [178 Cal.Rptr. 612, 636 P.2d 575]; *Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362, 371-373 [149 Cal.Rptr. 360, 584 P.2d 497].)

[9]As we mentioned above, plaintiffs concede the record does not show that Glendale acted as the beneficiary for Hopenstand; they argue, however, they were denied the discovery necessary to make that showing.

the trial court. (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 486-487 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) ▮ Additionally, our review here involves statutory interpretation, which requires us " ' "to ascertain and effectuate legislative intent." ' " (*Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 283 [67 Cal.Rptr.2d 621].) " ' "[T]he construction of statutes and the ascertainment of legislative intent are purely questions of law. This court is not limited by the interpretation of the statute made by the trial court." ' " (*Murray v. Oceanside Unified Sch. Dist.* (2000) 79 Cal.App.4th 1338, 1348 [95 Cal.Rptr.2d 28].) Legislative intent can be ascertained from the plain meaning of the statute, the legislative history, and "the wider historical circumstances of its enactment . . . ." (*Ibid.*)

▮ Using all these interpretive tools, we conclude the Legislature did not intend to give a beneficiary a "reasonable time" to execute the request for reconveyance. First, the statute says, "*When* the obligation secured by any deed of trust has been satisfied, the beneficiary or the assignee of the beneficiary shall execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust." (Civ. Code, § 2941, subd. (b)(1), italics added.) This language is to be contrasted with that of subdivision (a), which states, "*Within 30 days after* any mortgage has been satisfied, the mortgagee . . . shall execute a certificate of the discharge thereof . . . and shall record or cause to be recorded . . . in the office of the county recorder . . . ," and subdivision (b)(1)(A), which states, "The trustee shall execute the full reconveyance and shall record or cause it to be recorded . . . *within 21 calendar days after* receipt . . . of the original note . . . and other documents as may be necessary to reconvey . . . ." (Italics added.) It is clear from the latter two examples that the Legislature knows how to specify an extended time period within the context of this statute.

The legislative history of the statute also supports Cohen's interpretation. The 1988 amendment to Civil Code section 2941 was enacted as Assembly Bill No. 3893. It was sponsored by the Attorney General's Office, which analyzed the proposal (before its introduction) as follows: "Specifically, the bill would require that at time of payment, the beneficiary (i.e. creditor) transmit the note and trust deed to the trustee and request that the trustee execute a full reconveyance. The trustee would be required to record the reconveyance within 10 days after receiving the request . . . ."

The bill as introduced by Assemblyman Elihu Harris provided that the beneficiary had to execute and deliver the request for full reconveyance

"within 15 days after" the obligation had been satisfied; the trustee had an additional 15 days from receipt of the request to record. The Assembly Judiciary Committee deleted the phrase "within 15 days after" and substituted the word "when" for the beneficiary, retaining the 15-day time limit for the trustee. The bill was again amended before it went to the Senate Judiciary Committee, extending the trustee's time limit to record to 21 days from receipt of the request, the form in which it was enacted. The Senate Judiciary Committee analysis of the bill described it as requiring the trustee to execute and record a reconveyance within 21 days *after the note securing the deed of trust was satisfied.* Because the trustee has 21 days from the receipt of the request for reconveyance, the committee staff clearly contemplated the beneficiary would deliver the request on the day of satisfaction.

When the bill went to the Governor's desk, it was described by both the Attorney General and Assemblyman Harris as setting *specific* time limits for recording reconveyances. It would be inconsistent with this expressed legislative goal to couple an open-ended "reasonable" time period for the beneficiary with a specific 21-day limit for the trustee. Had the Legislature intended to provide a grace period for the beneficiary, as it did for the trustee, it would have done so. Most likely, the Legislature was attempting to correct a procedure such as Glendale's, where the beneficiary does not even start the process until after the loan is repaid.

We also find Glendale was the beneficiary on Cohen's trust deed within the meaning of Civil Code section 2941. Glendale's assignment of the trust deed was never recorded and Cohen was not notified. Glendale executed the request for reconveyance as the beneficiary and identified itself as the holder of the note. When executing the full reconveyance, Verdugo acknowledged that it received a request for reconveyance from the holder of the obligation under the deed of trust. In Kane's deposition, taken after the denial of the certification motion, she admitted Glendale is responsible for executing the request for reconveyance when it is the last recorded beneficiary. As we discussed above, the goal of the statute would be thwarted if Glendale could hold itself out as the beneficiary but avoid the commensurate responsibilities.

Both Cohen and Hopenstand challenge the summary judgment on their cause of action against Verdugo for violations of Civil Code section 2941. They claim the statutory exceptions to Verdugo's duty to record, found in subdivision (c) of section 2941, do not apply here. Subdivision (c) provides in relevant part: "The mortgagee or trustee shall not record or cause the certificate of discharge or full reconveyance to be recorded when any of the following circumstances exists: [¶] (1) The . . . trustee has received written

instructions to the contrary from the . . . trustor . . . or escrow. [¶] (2) The certificate of discharge or full reconveyance is to be delivered to . . . trustor . . . through an escrow to which the . . . trustor . . . is a party."

Cohen's escrow wrote to Glendale on August 3, 1992, and directed it to send the original note and deed of trust and a signed request for reconveyance *or a reconveyance issued by the trustee,* together with its demand statement, to Stewart Title in Irvine. Glendale sent only its demand statement on August 7; Verdugo sent nothing. On October 7, Glendale received Cohen's payoff check and the escrow closed. On October 16, Glendale mailed the reconveyance, executed by Verdugo, to Stewart Title in San Diego. On January 4, 1993, Cohen's title insurance company sent Glendale notice that no reconveyance had been recorded and that it planned to record a release of obligation, which it did 10 days later. In June, Stewart Title's San Diego office sent back the reconveyance to Glendale, and Glendale sent it to the Irvine office. But no one ever recorded it.

In Hopenstand's case, his escrow company sent Glendale a letter on November 19, 1992, directing it to send "your Reconveyance (or papers necessary to obtain same), together with your demand, fire insurance policy, title insurance policy and any other papers you may hold in connection with this loan." Glendale responded on December 14 by sending only its payoff demand statement to the subescrow. Glendale received a payoff check on January 15, 1993. Verdugo sent the reconveyance to the subescrow on March 26, 70 days later. The subescrow, through its agent Title Recon Tracking Service, recorded a release of obligation on April 28, 1993. Again, the reconveyance was never recorded.

Verdugo claims these letters constituted instructions from escrow not to record because the reconveyance was to be delivered through an escrow, thus bringing it within both exceptions to its duty to record under Civil Code section 2941, subdivision (c). Verdugo would be correct if it had complied with the instructions and sent the reconveyances to escrow. But neither Verdugo nor Glendale complied with the letters. Glendale sent only the payoff demands to escrow, not the other requested documents. Only after the escrows had closed did Glendale cause Verdugo to execute reconveyances. Thus, the point of the exceptions, that the trustee is relieved of its duty to record when the duty has shifted to an escrow, was defeated. Once escrow closed, the reconveyances could no longer be recorded through it.

Defendants cannot have it both ways. Having treated the instruction letters as requests for a payoff demand only, they cannot now claim that the letter constituted instructions to transmit a reconveyance within the meaning of

Civil Code section 2941, subdivision (c). Similarly, having refused to provide the escrow with the reconveyance, Verdugo cannot now claim that it was excused from recording because the reconveyance was to be delivered through an escrow. Verdugo's interpretation of the exceptions would eviscerate the statute by excusing large commercial lenders from the obligation to record reconveyances in every transaction where an escrow is used.

Defendants claim their position is supported by *Serafin v. First Interstate Bank* (1997) 58 Cal.App.4th 785 [68 Cal.Rptr.2d 297]. Serafin sued First Interstate Bank (which acted as beneficiary and trustee for her trust deed) for violations of Civil Code section 2941, subdivision (b). The escrow sent First Interstate a request for a demand and an executed reconveyance to be recorded through escrow. First Interstate responded, " '*In accordance with your request*, we submit our demand and will forward to you a delayed full reconveyance *to be recorded* upon receipt of funds and fees listed below.' (Italics added.)" (58 Cal.App.4th at p. 788.) First Interstate sent the request for reconveyance to its trustee department 18 days after the loan was paid off, and its trustee department sent the reconveyance to the escrow company four days later. The reconveyance was never recorded.

The court found First Interstate was not obligated to record the reconveyance because it was "to be delivered to the . . . trustor . . . through an escrow to which the . . . trustor . . . is a party." (Civ. Code, § 2941, subd. (c)(2).) The court found the exception applied because the escrow had asked First Interstate to send the reconveyance there; the court did not discuss the fact that the escrow had closed long before the reconveyance was sent, thus precluding its recordation by escrow. The court seems to miss that point. In a footnote, it claims, "[O]ur conclusion is consistent with the general rule that in a refinance situation, the trustee's obligation is to execute the reconveyance and have it deposited in an escrow for recordation *upon close of escrow*." (*Serafin v. First Interstate Bank, supra,* 58 Cal.App.4th at p. 794, fn. 5, italics added.)

While we think the *Serafin* court is on shaky analytical ground, that case can be distinguished from this one. In *Serafin*, the beneficiary/trustee told the escrow it intended to effect a delayed recording of the reconveyance by sending it to the escrow company after closing, and the escrow company, by its silence, did not object. It could be argued that under those circumstances, the escrow company assumed the obligation to record. Here, however, in each case Glendale/Verdugo made no such communication to escrow; they merely ignored the request for a reconveyance to be recorded through escrow and sent it to the title company long after the closing, with the apparent hope that the title company would record it. As is apparent, this method is ineffective to accomplish the goal of the statute, i.e., to have full reconveyances recorded in a timely manner.

## IV. *Denial of Discovery on Class Issues*

■ Cohen and Hopenstand claim the trial court abused its discretion by denying them discovery necessary to support class certification. We agree. A party is entitled to such discovery before the class is certified, not after. (*Carabini v. Superior Court, supra,* 26 Cal.App.4th at p. 244.) " '[W]hether the common questions are sufficiently pervasive to permit adjudication in a class action rather than in a multiplicity of suits' [citation] cannot realistically be made until the parties have had a chance to conduct reasonable investigation." (*Atari, Inc. v. Superior Court* (1985) 166 Cal.App.3d 867, 870 [212 Cal.Rptr. 773].) Even if plaintiffs' discovery requests were overbroad, the trial court should have restricted discovery rather than prohibiting it because a class had not yet been certified.

### DISPOSITION

In appeal case No. G020529, the order denying the motion to certify the class is reversed. The trial court can decertify the class later if further discovery reveals the common issues do not predominate. (See *National Solar Equipment Owners' Assn. v. Grumman Corp., supra,* 235 Cal.App.3d at 1286.) In appeal case No. G021899, the summary judgment against Cohen is reversed in all respects. The summary judgment against Hopenstand is reversed as to the second cause of action against Verdugo only. The trial court is directed to allow reasonable discovery on issues relating to the nationwide class. Appellants are entitled to their costs of appeal.

Crosby, J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied July 18, 2000, and the petition of defendants and appellants for review by the Supreme Court was denied October 18, 2000. Kennard, J., was of the opinion that the petition should be granted.