[No. B179923. Second Dist., Div. Four. May 31, 2006.]

DONALD J. MARKOWITZ, Plaintiff and Appellant, v.
FIDELITY NATIONAL TITLE COMPANY, Defendant and Respondent.

**COUNSEL**

Gary G. Kuist for Plaintiff and Appellant.

Hershorin & Henry and Lori C. Hershorin for Defendant and Respondent.

OPINION

## WILLHITE, J.—

## INTRODUCTION

Plaintiff Donald J. Markowitz (Donald) appeals from a judgment entered following the trial court's granting of a motion for nonsuit in favor of Fidelity National Title Company (Fidelity). Donald brought the present action against Fidelity and other defendants, who are not parties to this appeal, based in part on the defendants' failure to record a request for reconveyance of a deed of trust on Donald's real property that secured a promissory note held by two of the defendants. Donald alleged that Fidelity, which acted as a sub-escrow in the transaction at issue, breached statutory and fiduciary duties it owed to him. The trial court granted Fidelity's motion for nonsuit following Donald's opening statement. Because we find that Donald did not, and could not under the factual circumstances alleged by him, establish that Fidelity owed any duty to him, we conclude that nonsuit was properly granted in favor of Fidelity. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The present lawsuit arises out of nonjudicial foreclosure proceedings initiated by Mordechai Kachlon (Mordechai), his wife Monica Kachlon (Monica),[1] and the trustee, Best Alliance Foreclosure and Lien Services, against a residence jointly owned by Donald and his wife, Debra W. Markowitz (Debra).[2]

*Donald's Opening Statement*

We set forth the facts as framed by Donald's pleadings and as stated in his opening statement, incorporating the contents of exhibits on which he relied.

In September 1998, the Markowitzes purchased a residence on Leghorn Avenue from the Kachlons. As part of the purchase price, the Kachlons received a promissory note for $53,000, secured by a second deed of trust (Kachlon deed of trust) on the residence. The promissory note was partially satisfied over the next few years.

---

[1] The parties are often referred to herein by their first names for purposes of clarity. No disrespect is intended.

[2] At the time of the foreclosure proceedings, an action was pending to dissolve the Markowitzes' marriage.

Debra is not a party to this appeal.

In late 2001 or early 2002, a dispute arose between the Kachlons and the Markowitzes with regard to the amount still owing under the promissory note. Eventually, an agreement was reached, and the Kachlons acknowledged in writing that the obligation on the $53,000 promissory note was reduced by $41,000 to reflect payments and credits received from the Markowitzes.

In July 2002, City National Bank (Bank) agreed to extend to Donald a $200,000 line of credit, which was to be secured by a new second deed of trust on the Leghorn residence. To complete this transaction, the Bank required that the $53,000 promissory note be repaid in full, and the Kachlon deed of trust reconveyed. The Bank retained Fidelity to provide a policy of title insurance, and Fidelity also agreed to act as a sub-escrow to hold and exchange money and documents between Donald and the Kachlons.

The Kachlons were sent a request for demand, on the Bank's letterhead, dated July 12, 2002, indicating Donald had made a loan request to be secured by the Leghorn property. The request for demand stated in part: "The instructions provide for the payment in full of the incumbrance [*sic*] now held by you on said property. At the request of the parties in interest, please complete and sign the original of the Beneficiary's Demand below and send this entire page, together with the original Note, Deed of Trust securing same, and Request for Reconveyance thereof, signed by all the owners of the Note" to the attention of Jill Culver at Fidelity. The bottom portion of the request for demand, which is addressed to the Bank (parts of which were filled out by hand, either by Mordechai or at his behest), states: "I hand you herewith:" (1) "Note for $53,000.00"; (2) "Deed of Trust securing same . . ."; and (3) "Request for Reconveyance thereof, executed by: Mordechai and Monica Kachlon."[3] It continues: "I authorize you to use all of the documents described above in accordance with the instructions of the parties in interest, provided that, on or before August 31, 2002, you hold for the parties executing said Request for Reconveyance the principal sum of $12,000. and interest thereon at 0 per cent per annum . . . . Make disbursement by check payable to: Mordechai and Monica Kachlon. [¶] In the event that the conditions of this Demand have not been complied with at the time provided herein, you are nevertheless instructed to use said documents at any time thereafter as soon as the conditions (except as to time) have been complied with, unless I shall have made written demand upon you for their return to me." Signatures for Mordechai and Monica Kachlon appear at the bottom of the form; Mordechai signed for himself but, at Mordechai's request, Debra signed Monica's name.

---

[3] The underlined portions are those that are handwritten, as opposed to being part of the printed form.

The request for full reconveyance (addressed to Old Republic Title Company as trustee), stated that the undersigned is the legal owner and holder of the note for the total original sum of $53,000, secured by the deed of trust executed by the Markowitzes, as trustor, to Old Republic Title Company, as Trustee. "Said Note . . . , together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, upon payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said Note . . . , and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same." The request for reconveyance bore signatures for Mordechai and Monica. Standard notarization language was printed to the left of the signatures, but this portion of the form was not completed.

Mordechai delivered the above described beneficiary's demand for the sum of $12,000, the request for reconveyance, the original promissory note, and the original Kachlon deed of trust to Fidelity on or about July 24, 2002. In exchange, Mordechai received from Fidelity a check for $12,000, payable to both Mordechai and Monica. Mordechai and Monica endorsed the back of the check and deposited it.

By letter dated July 22, 2002, the Bank instructed Fidelity "to file documents for record, when by so doing, you will issue and deliver to us, your ALTA . . . Loan Policy of Title Insurance, with [specified] endorsements . . . , showing a liability of $200,000.00, covering [Donald's and Debra's] property . . . ." The Bank also stated as follows: "You are authorized to record Wednesday, July 24, 2002 at 8:00 a.m. showing our deed in the second trust deed position." (Capitalization omitted.)

Fidelity thereafter failed to ensure that a reconveyance was recorded, and did not inform Donald that a reconveyance had not been recorded. Nonetheless, a new deed of trust in favor of the Bank was recorded, and the line of credit transaction concluded.

In January 2003, Fidelity commenced the statutory procedure for clearing title pursuant to Civil Code section 2941, subdivision (b)(3), whereby a title insurer may prepare and record a release of obligation. Fidelity sent written notice to the Kachlons that their deed of trust had not been removed, and advising them that unless they objected, Fidelity was going to record a release of the obligation. The Kachlons reported to Fidelity that the promissory note had not been paid in full.

The Kachlons then initiated a foreclosure proceeding and caused a notice of default to be recorded. The trustee dismissed the proceeding, however, after seeing the documents evidencing full satisfaction of the obligation. The Kachlons substituted another trustee and initiated another foreclosure proceeding, with the same result. They next substituted Best Alliance as trustee in June 2003, which then caused a notice of default to be recorded claiming that $56,899.91 was due under the promissory note.

### Donald's Complaint

After Best Alliance refused to dismiss the foreclosure proceedings, Donald and Debra filed the present lawsuit on August 27, 2003, naming Mordechai, Monica, and Best Alliance as defendants, and alleging that the foreclosure was fraudulent because the underlying promissory note had been fully satisfied. The Bank and Fidelity were also named as defendants.[4] The complaint requested declaratory relief, an injunction against the foreclosure, and to quiet title. In addition, Donald and Debra sought damages on various theories against the Kachlons and Best Alliance.

Relevant here, in the eighth cause of action for breach of fiduciary duty, Donald alleged that the Bank agreed to act as escrow, and arranged for Fidelity, its title company, to act as sub-escrow. Fidelity agreed to assume the following duties: to hold Donald's loan proceeds and, upon receipt of a beneficiary's demand and a request for reconveyance, to pay off the existing promissory note; to ensure that a reconveyance of the deed of trust was recorded and that the deed of trust was removed as a lien on the Leghorn residence; to do all of the things normally done by an escrow agent which were not expressly excluded by the escrow instructions; and to communicate knowledge acquired during the course of escrow.

Donald further alleged that a fiduciary relationship was formed between himself and Fidelity, and that Fidelity breached that duty by failing to properly prepare the necessary documentation to ensure the deed of trust could be properly and timely reconveyed; by failing to ensure the deed of trust was reconveyed such that the deed of trust was removed as a lien on the Leghorn residence; by failing to do all things normally done by an escrow agent which would result in the deed of trust being reconveyed and removed as a lien on the Leghorn residence; and by failing to communicate to Donald that the deed of trust had not been reconveyed and removed as a lien on the Leghorn residence. Donald alleged he sustained damages by having to defend multiple wrongful foreclosures and by expending time, expense, and attorney fees to clear title to the property.

---

[4] The Bank was dismissed without prejudice prior to trial.

In the ninth cause of action for negligence, Donald alleged that by assuming the duties of an escrow holder, Fidelity owed Donald the duty to exercise ordinary skill and diligence in carrying out the tasks assigned or assumed by it, and breached such duty by those failures as alleged in the eighth cause of action.

In the tenth cause of action for breach of statutory duty, Donald alleged that Fidelity assumed the duty to comply with the statutory scheme set forth under Civil Code section 2941 et seq. Pursuant thereto, Fidelity assumed the duty to obtain from the Kachlons and deliver to the trustee of the deed of trust the original promissory note, the original deed of trust, a request for a full reconveyance, and other documents as necessary to reconvey, or cause to be reconveyed, the deed of trust. The trustee was then obligated to execute a deed of reconveyance and deliver it to escrow, and Fidelity was required to cause the deed of reconveyance to be recorded prior to the close of escrow. Fidelity breached that duty by failing to obtain a request for reconveyance addressed to the proper trustee, and other necessary documents; by failing to deliver to the trustee the promissory note, deed of trust, request for reconveyance, and other documents, and by failing to cause a deed of reconveyance to be recorded prior to the close of escrow. Donald prayed for damages as previously alleged, and further alleged that Fidelity was obligated to pay the $500 penalty provided for by Civil Code section 2941.

In the eleventh cause of action, also for breach of statutory duty, and brought on behalf of both Donald and Debra, they alleged that Fidelity, before commencing the statutory procedure for clearing title under Civil Code section 2941, subdivision (b)(3), was required to first make demand on the trustee under the deed of trust to execute and cause to be recorded a deed of reconveyance, but failed to do so.

*Motion for Judgment on the Pleadings*

In early July 2004, Fidelity filed a motion for judgment on the pleadings. Fidelity pointed to a declaration submitted by Debra in support of a previous motion for summary adjudication and her deposition testimony in which she stated that she signed Monica's name to the payoff demand and the request for reconveyance.[5] Fidelity argued that such instruments were void or voidable, and Fidelity could not be charged with any legal duty to cause such documents to be recorded. Fidelity also argued that there still remained a dispute as to whether the $53,000 promissory note had been paid in full, and

---

[5] Fidelity asked the court to take judicial notice of the declaration and deposition, and of the court's order of March 18, 2004, stating, "There is no question Mrs. Kachlon's signature on the reconveyance was forged by Mrs. Markowitz." We note that this supposed order is not in the form of a minute order and does not bear a file stamp or signature of the court.

legal duties do not arise pursuant to Civil Code section 2941 until there has been a full satisfaction of the underlying debt secured by the deed of trust. In addition, Fidelity contended that causation could not be shown because it was speculative to argue that the trustee would have recorded the reconveyance even if Fidelity had sent the documentation to the trustee.

Donald opposed the motion for judgment on the pleadings, arguing that the evidence did not establish a forgery of any instrument because although Debra said she signed the payoff demand and another document, she did so because Mordechai told her Monica knew all about it, and Mordechai had Monica's authority to proceed in that manner. Donald also argued that, in any event, a request for reconveyance is not recorded and is merely a request that the trustee prepare a deed of reconveyance, which is recorded. Citing Civil Code section 2943, Donald contended that Fidelity had the right to rely on the payoff amount stated in the beneficiary's demand, and upon payment of that amount, the lien was discharged as a matter of law. Donald asserted that only one spouse's signature, in this case Mordechai's, was required to create an enforceable request for reconveyance. He asserted that the Kachlon deed of trust remained of record not because Fidelity had been advised that Monica had not signed the request for reconveyance, but rather because Fidelity named the wrong trustee in the request for reconveyance and also erroneously accepted the request for reconveyance without the verification section being completed, thus breaching its duty to "properly prepare the necessary documentation."

The court denied the motion for judgment on the pleadings, finding that the evidence was conflicting as to whether or not Debra had permission to sign Monica's name.

*The Motion In Limine*

Before the jury was empanelled, Fidelity requested that the court decide the legal issues of duty and causation. The parties briefly argued the matter, after which the court requested further briefing on the subject of whether a title company has any duty to someone who has not contracted with that title company. Donald's brief stated his intent to present evidence that the transaction was a refinance escrow, with Fidelity assuming the duty as sub-escrow to exchange Donald's money for the Kachlons' properly executed documents, and record the Bank's deed of trust in the second trust deed position, pursuant to instructions from the Bank. Fidelity's supplemental brief argued that no escrow existed, and that it owed no duties to Donald.

Prior to jury selection, without specifically ruling on issues of duty and causation, the court ruled that Fidelity would remain in the action.

*Opening Statements*

After jury selection was completed, the Kachlons and Best Alliance delivered their opening statements, followed by Debra, then Donald.

Donald's counsel first outlined the evidence showing how the promissory note was satisfied. Donald, Debra, Mordechai, and Monica executed a written agreement stating the $53,000 promissory note was reduced by $41,000 to reflect prior credits and payments. Donald applied to the Bank for a line of credit, and the Bank sent a beneficiary's demand asking the Kachlons to state the sum required to pay off the Kachlon lien. Mordechai signed and delivered the beneficiary's demand, stating the payoff demand was $12,000. The Bank showed Donald a copy of the beneficiary's demand and he agreed to pay the $12,000 from his line of credit. The Bank funded the money, and it was deposited with Fidelity. Fidelity disbursed Donald's $12,000 to the Kachlons; in exchange, Fidelity received the original promissory note, the original deed of trust, and a request for reconveyance. Both Kachlons endorsed the check for $12,000 and deposited it, thereby satisfying the promissory note.

Donald said the evidence would show that Fidelity agreed to act as a sub-escrow. Fidelity agreed to hold the $12,000 to be paid out upon presentation of a properly executed request for reconveyance. Fidelity also agreed to record the Bank's new deed of trust showing it to be in the second position. However, Fidelity paid out the funds without receiving a proper request for reconveyance, and failed to remove the Kachlon deed of trust so that the Bank would be shown in a second position. Then for nine months Fidelity told the Bank that it was indeed in a second position and the Kachlon lien had been removed, even supplying a recording number as proof of a reconveyance.

Donald asserted that Fidelity did not remove the Kachlon lien because of two defects in the request for reconveyance: it was addressed to the wrong trustee, and the Kachlons' signatures were not notarized. Fidelity's file bore a notation indicating a problem with notarization, suggesting the lack thereof was the reason for not reconveying.

When the Kachlons learned their lien remained of record, they demanded additional sums by commencing successive foreclosure proceedings. Best Alliance, acting as trustee, claimed that $56,000 was due under the promissory note. Donald had to commence the present action to quiet title.

*The Motion for Nonsuit*

After opening statements, Fidelity moved for nonsuit against both Debra and Donald. Fidelity asserted that, in opening statement, Debra's counsel

admitted that the request for reconveyance was a forgery. Fidelity could not be required to place a forged instrument in the stream of commerce.

Debra's counsel argued that Debra's conduct did not invalidate the request for reconveyance, noting that counsel's opening statement also discussed the evidence about Monica ratifying the instrument. Debra also argued that Civil Code section 2941 was not relevant because it addresses the duties of beneficiaries, not the duties of an escrow holder. The statute gives beneficiaries 30 days to submit a beneficiary's demand; it does not give an escrow holder 30 days to forward papers to the trustee.

Donald argued that a request for reconveyance requires only one signature, and Mordechai admittedly signed the instrument. The Kachlons admitted in verified pleadings that at all times Mordechai was the agent of his wife Monica. The request for reconveyance would not be rendered invalid simply because Monica had not signed it. He further argued that the beneficiary's demand merely had to be prepared by a beneficiary and presented by a beneficiary, as was done here, and Fidelity could then rely on the instrument. The lien was thus extinguished as a matter of law. Regardless of the lack of Monica's signature, Fidelity had the legal right to proceed with recording the deed of reconveyance.

Donald also contended that the motion for nonsuit ignored the fact that the circumstances present here were caused by Fidelity's negligence and breach of duty in failing to notice that the request for reconveyance was addressed to the wrong trustee and had not been notarized. If Fidelity had required Mordechai to return with notarized signatures, the issue would not have arisen.

Finally, Donald asserted that Fidelity could not rely on the rights of beneficiaries under Civil Code section 2941. The payment of Donald's money was conditioned on obtaining a reconveyance. Fidelity was under instructions to record a reconveyance so that the Bank's deed of trust would be in second position; a reconveyance was required before escrow could close.

After hearing argument, the court granted the motion for nonsuit because it did not believe Donald or Debra stated a cause of action "based on the 30-day notice."

This timely appeal followed.

# DISCUSSION

## I.  Standard of Review

"On a motion for nonsuit, ' "the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . .' " [Citations.] [¶] In an appeal from a judgment of nonsuit, the reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff. "The judgment of the trial court cannot be sustained unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law." ' (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838–839 [206 Cal.Rptr. 136, 686 P.2d 656].)

" 'Moreover, the granting of a nonsuit after an opening statement is a disfavored practice; it will be upheld only when it is clear that counsel has undertaken to state all of the facts which he expects to prove and it is plainly evident that those facts will not constitute a cause of action.' [Citations.]" (*Freeman v. Lind* (1986) 181 Cal.App.3d 791, 798–799 [226 Cal.Rptr. 515].)

" 'The rules governing the granting of a nonsuit, however, do not relieve the plaintiff of the burden of establishing the elements of his case. The plaintiff must therefore produce evidence which supports a logical inference in his favor and which does more than merely permit speculation or conjecture. [Citation.] If a plaintiff produces no substantial evidence of liability or proximate cause then the granting of a nonsuit is proper. [Citation.]' (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402 [209 Cal.Rptr. 456].)" (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1209 [122 Cal.Rptr.2d 890].)

"Our review is also governed by the familiar admonition that ' ". . . a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." [Citation.]' (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)" (*Devin v. United Services Auto. Assn.* (1992) 6 Cal.App.4th 1149, 1156 [8 Cal.Rptr.2d 263].)

## II.   Fidelity Has No Duty to Donald

■   On appeal, Donald argues that the trial court granted nonsuit based on the assertions made by Debra's counsel during opening statement regarding Debra's having signed Monica's name on the request for reconveyance given to Fidelity. On appeal, Fidelity also focuses primarily on the effect of Debra's signing the request for reconveyance. The court stated, however, that it granted nonsuit because Donald did not state a cause of action "based on the 30-day notice," clearly a reference to Civil Code section 2941. It thus appears that nonsuit was granted, at least in part, on the ground that Fidelity owed no statutory duty to Donald. As we shall explain, we agree with the trial court in that regard. We further conclude that Fidelity did not breach any fiduciary duty owed to Donald, or otherwise owe a duty of care which it negligently performed. We reach these conclusions without relying on the purported admission by Debra that she signed the request for reconveyance for Monica, or on any finding that the document was or was not a forgery. Based solely on the facts presented in Donald's opening statement, we conclude that he did not and could not state a cause of action against Fidelity.

*Donald's Theories Regarding Duties Owed to Him by Fidelity*

1.   *Statutory Duty (Civil Code Section 2941)*

■   "Civil Code section 2941[6] establishes the respective duties of the beneficiary and trustee with respect to the reconveyance of a deed of trust after the secured obligation is satisfied. Subdivision (b)(1) requires the

---

[6] Civil Code section 2941, as arguably relevant here, provided as follows at the time of the events at issue: "(b)(1) Within 30 calendar days after the obligation secured by any deed of trust has been satisfied, the beneficiary or the assignee of the beneficiary shall execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust.

"(A) The trustee shall execute the full reconveyance and shall record or cause it to be recorded in the office of the county recorder in which the deed of trust is recorded within 21 calendar days after receipt by the trustee of the original note, deed of trust, request for a full reconveyance, the fee that may be charged pursuant to subdivision (e), recorder's fees, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust.

"(B) The trustee shall deliver a copy of the reconveyance to the beneficiary, its successor in interest, or its servicing agent, if known. The reconveyance instrument shall specify the trustor as the person to whom the recorder will deliver the recorded instrument pursuant to Section 27321 of the Government Code.

"(C) Following execution and recordation of the full reconveyance, upon receipt of a written request by the trustor or the trustor's heirs, successors, or assignees, the trustee shall then deliver, or caused to be delivered, the original note and deed of trust to the person making that request. [¶] . . . [¶]

"(2) If the trustee has failed to execute and record, or cause to be recorded, the full reconveyance within 60 calendar days of satisfaction of the obligation, the beneficiary, upon

beneficiary, upon payoff, to 'execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance . . . .' The trustee then executes and records the full reconveyance within 21 days of receipt of the documents from the beneficiary, delivers a copy of the reconveyance to the beneficiary and, upon request, delivers the original note and deed of trust to the trustor. (Civ. Code, § 2941, subd. (b)(1)(A)–(C).)

"In case the former procedure is not followed by either the trustee or the beneficiary, the statute provides two backup methods to assure the trustor can promptly clear title to the secured property. First, upon request by the trustor, the beneficiary must substitute itself in as trustee and execute a full reconveyance. (Civ. Code, § 2941, subd. (b)(2).) Second, if neither the trustee nor the beneficiary has executed the full reconveyance within 75 calendar days after

---

receipt of a written request by the trustor or trustor's heirs, successor in interest, agent, or assignee, shall execute and acknowledge a document pursuant to Section 2934a substituting itself or another as trustee and issue a full reconveyance.

"(3) If a full reconveyance has not been executed and recorded pursuant to either paragraph (1) or paragraph (2) within 75 calendar days of satisfaction of the obligation, then a title insurance company may prepare and record a release of the obligation. However, at least 10 days prior to the issuance and recording of a full release pursuant to this paragraph, the title insurance company shall mail by first-class mail with postage prepaid, the intention to release the obligation to the trustee, trustor, and beneficiary of record, or their successor in interest of record, at the last known address. [¶] . . . [¶]

"(B) The release issued pursuant to this subdivision shall be entitled to recordation and, when recorded, shall be deemed to be the equivalent of a reconveyance of a deed of trust. [¶] . . . [¶]

"(5) Paragraphs (2) and (3) do not excuse the beneficiary or the trustee from compliance with paragraph (1). Paragraph (3) does not excuse the beneficiary from compliance with paragraph (2).

"(6) In addition to any other remedy provided by law, a title insurance company preparing or recording the release of the obligation shall be liable to any party for damages, including attorneys' fees, which any person may sustain by reason of the issuance and recording of the release, pursuant to paragraphs (3) and (4).

"(7) A beneficiary may, at its discretion, in accordance with the requirements and procedures of Section 2934a, substitute the title company conducting the escrow through which the obligation is satisfied for the trustee of record, in which case the title company assumes the obligation of a trustee under this subdivision, and may collect the fee authorized by subdivision (e).

"(8) In lieu of delivering the original note and deed of trust to the trustee within 30 days of loan satisfaction, as required by paragraph (1) of subdivision (b), a beneficiary who executes and delivers to the trustee a request for a full reconveyance within 30 days of loan satisfaction may, within 120 days of loan satisfaction, deliver the original note and deed of trust to either the trustee or trustor. If the note and deed of trust are delivered as provided in this paragraph, upon satisfaction of the note and deed of trust, the note and deed of trust shall be altered to indicate that the obligation is paid in full. Nothing in this paragraph alters the requirements and obligations set forth in paragraphs (2) and (3). [¶] . . . [¶]

"(d) The violation of this section shall make the violator liable to the person affected by the violation for all damages which that person may sustain by reason of the violation, and shall require that the violator forfeit to that person the sum of five hundred dollars ($500)."

All undesignated section references are to the Civil Code.

the loan payoff, 'a title insurance company may prepare and record a release of the obligation' after giving notice of its intent to do so to the trustor, trustee, and beneficiary. 'The release issued pursuant to this subdivision shall be entitled to recordation and, when recorded, shall be deemed to be the equivalent of a reconveyance of a deed of trust.' (Civ. Code, § 2941, subd. (b)(3)(B).)

"[S]ubdivision (d) of Civil Code section 2941, . . . provides: 'The violation of this section shall make the violator liable to the person affected by the violation for all damages which that person may sustain by reason of the violation, and shall require that the violator forfeit to that person the sum of [five] hundred dollars ($[500]).' " (*Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1241–1242 [78 Cal.Rptr.2d 566].)

Thus, as applicable here, section 2941 required the Kachlons, as beneficiaries, within 30 days of satisfaction of the promissory note, to execute and deliver to the trustee the original note, deed of trust, and request for a full reconveyance. They fulfilled this obligation by simultaneously exchanging the required documents for the $12,000 check. Section 2941 then required the trustee to execute and record.the full reconveyance within 21 days of receipt of the documents, deliver a copy of the reconveyance to the beneficiary and, upon request, deliver the original note and deed of trust to the trustor, in this case Donald. (§ 2941, subd. (b)(1)(A)–(C).) However, the trustee never received the documents from Fidelity, and therefore its duty to record did not arise.

Failing recordation by the trustee, upon request by Donald, the Kachlons would be required to substitute in as trustee and execute a full reconveyance. (§ 2941, subd. (b)(2).) Or, if neither the trustee nor the beneficiary has executed the full reconveyance within 75 calendar days after the loan payoff, "a title insurance company may prepare and record a release of the obligation" after giving notice of its intent to do so to the trustor, trustee, and beneficiary, and the release would serve as the equivalent of a reconveyance. (§ 2941, subd. (b)(3)(B).)

■ The plain language of the statute imposes no obligations on an escrow holder whose role it is to facilitate the exchange of documents between the beneficiary and the trustee, or to record the reconveyance on behalf of the trustee. The statute speaks only to the duties and obligations of trustees and beneficiaries. The only exceptions, not applicable here, are when a title insurance company: (1) prepares and records a release of the obligation (§ 2941, subd. (b)(6) [title company liable to any party for damages sustained by reason of issuance and record of release pursuant to paragraphs (3) and (4)]); or (2) is substituted in by a beneficiary pursuant to Civil Code section

2934a, in which case the title company "assumes the obligation of a trustee under this subdivision." (§ 2941, subd. (b)(7).) The statute does not expressly create duties or obligations for escrow holders.

Nonetheless, Donald contends that if an escrow is used, the duty to record the trustee's deed of reconveyance is said to be shifted to the escrow holder (citing *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 834–835 [97 Cal.Rptr.2d 226], and *Serafin v. First Interstate Bank* (1997) 58 Cal.App.4th 785, 793–797 [68 Cal.Rptr.2d 297]). The escrow holder is then charged with the duty of obtaining from the trustee the deed of reconveyance and causing it to be recorded prior to the close of escrow (citing *Bartold* at p. 834, and *Trustors Security Service v. Title Recon Tracking Service* (1996) 49 Cal.App.4th 592, 596 [56 Cal.Rptr.2d 793].)

However, the cases cited by Donald interpreted and relied on former section 2941, subdivision (c), which was deleted by legislative amendment the year prior to the events at issue here. (See Stats. 2001, ch. 560, § 1.) Former subdivision (c) read: "The mortgagee or trustee shall not record or cause the certificate of discharge or full reconveyance to be recorded when any of the following circumstances exist: [¶] (1) The mortgagee or trustee has received written instructions to the contrary from the mortgagor or trustor, or the owner of the land, as the case may be, or from the owner of the obligation secured by the deed of trust or his or her agent, or escrow. [¶] (2) The certificate of discharge or full reconveyance is to be delivered to the mortgagor or trustor, or the owner of the land, as the case may be, by the escrow agent that conducted an escrow to which the mortgagor, trustor, or owner was a party."

The legislative history of the amendment deleting former section 2941, subdivision (c), indicates that the Legislature specifically intended to provide that the responsibility for recording a reconveyance or its equivalent remains at all times with the trustee, and is not "shifted" to an escrow holder. The Senate Rules Committee's Analysis stated in relevant part: "Existing law provides that the trustee shall not record the certificate of discharge or the reconveyance when they have received contrary instructions from the borrower, when the certificate of reconveyance is to be delivered by the escrow agent, or under other specified circumstances. [Sec. 2941(c).] [¶] This bill would delete this provision of the law, *so that the trustee would retain the responsibility to record the certificate of discharge or the reconveyance under all circumstances.*" (Sen. Rules Com., analysis of Assem. Bill No. 1090 (2001–2002 Reg. Sess.) as amended Aug. 31, 2001, italics added.)

Such was the state of the law in 2002 when Donald refinanced his property. We therefore conclude that Fidelity did not owe a statutory duty to Donald

based on the provisions of section 2941. That being the only statute cited by Donald as creating a duty that Fidelity breached, we conclude that, even interpreting the evidence most favorably to Donald's case, he cannot state a cause of action for breach of statutory duty.

### 2. *Breach of Fiduciary Duty/Negligence*

Donald asserted during his opening statement that Fidelity breached fiduciary duties owed to him by virtue of its agreement with the Bank to act as sub-escrow, and negligently performed its duties as an escrow holder. Specifically, he asserts on appeal that Fidelity (1) failed to follow the instruction to reconvey the Kachlon deed of trust before recording the Bank's deed of trust; (2) negligently prepared the request for reconveyance by addressing it to the wrong trustee and failing to require notarized signatures; and (3) failed to disclose that the reconveyance did not occur.

As to the purported failure to follow escrow instructions, during opening statement Donald said the evidence would show that Fidelity agreed to record the Bank's new deed of trust showing it to be in the second position. This statement was clearly a reference to a letter written by the Bank to Fidelity with regard to the refinance transaction, on which Donald intended to rely as a trial exhibit. To wit, by letter dated July 22, 2002 (addressed solely to Fidelity, to the attention of Jill Culver), the Bank directed as follows: "You are instructed to file documents for record, when by so doing, you will issue and deliver to us, your ALTA (1970 version) Loan Policy of Title Insurance with [specified] endorsements . . . , showing a liability of $200,000.00, covering the property described above and in the documents received from us, and showing title vested in Donald J. Markowitz and Debra W. Markowitz, husband and wife." (Capitalization omitted.) The letter further stated: "Items authorized to show: 1, 3, 4, 5, 6, and 7." The Bank indicated that it had previously forwarded to Fidelity—in addition to an original and signed deed of trust dated July 16, 2002, an original and signed request for notice, and a confidential information statement—a "request for demand-approved for payment." Regarding the request for demand, the Bank stated: "Please provide the pre-figures to payoff existing 2nd T/D Holder-(item # 8 on your Prelim)." The Bank specified that it would wire funds to Fidelity's account in accordance with Fidelity's instructions the following day, on July 23, 2002. It continued: "You are authorized to record Wednesday, July 24, 2002 at 8:00 a.m. showing our deed in the second trust deed position." (Capitalization omitted.) The letter was signed by Agnes Lee, a senior loan administrator for the Bank. There is no indication that Donald received a copy of this letter; rather it appears that he obtained the letter from the Bank during pretrial discovery.

■ An escrow may be defined as any transaction in which one person, for the purpose of effecting a sale, transfer or encumbrance of real or personal property to another person, delivers any written instrument, money, evidence of title or other thing of value to a third party, the escrow holder or depository, to be held by him for ultimate transmittal to the other person upon the happening of an event or the performance of certain specified conditions. (See Fin. Code, § 17003, subd. (a); Civ. Code, § 1057; see also *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711–714 [117 Cal.Rptr.2d 541, 41 P.3d 548] (*Summit*); *Peterson Development Co. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103 [284 Cal.Rptr. 367].)

Based on the facts presented by Donald, we conclude that an escrow existed, with Fidelity functioning as a sub-escrow holder, and that Donald had an interest in the escrow. A portion of the loan proceeds from the Bank was placed in escrow with Fidelity, to be delivered to the Kachlons upon receipt of the original promissory note, the original deed of trust, and the request for reconveyance of the deed of trust on Donald's property. That Donald had an interest in the escrow, however, does not mean that he was a party to the escrow, or to the escrow instructions on which he relies. He did not submit any instructions to Fidelity, written or oral, and he had little or no contact with Fidelity. His contact was with the Bank.

■ "An escrow holder is an agent and fiduciary of the parties to the escrow. [Citations.] The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. [Citations.] If the escrow holder fails to carry out an instruction it has contracted to perform, the injured party has a cause of action for breach of contract. [Citation.]

"In delimiting the scope of an escrow holder's fiduciary duties, then, we start from the principle that '[a]n escrow holder must comply strictly with the instructions of the parties. [Citations.]' [Citation.] On the other hand, an escrow holder 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' [Citations.] Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions. [Citations.]" (*Summit, supra,* 27 Cal.4th at p. 711.)

Donald contends that Fidelity had a duty to record a new deed of trust in favor of the Bank securing the $200,000 line of credit *only* when in so doing, the deed of trust would be recorded in second position. This would necessarily require removal of the Kachlon deed of trust. The Bank's letter to Fidelity did indeed state: "You are authorized to record . . . July 24, 2002 . . . showing our deed in the second trust deed position."

The defect in Donald's argument, however, is that he was not a party to the escrow instructions on which he relies. Fidelity's duties arising out of those instructions were defined, and limited, by the terms of those instructions. Donald points only to the written instructions given to Fidelity by the Bank; he does not allege that he gave Fidelity any written or oral instructions regarding carrying out the escrow. As we shall explain, the duty arising from the instruction authorizing recordation of the Bank's deed of trust "showing . . . in the second trust deed position" was owed to the Bank, not to Donald.

■ Further, it is insufficient to observe that Donald would also benefit from performance of the instruction. "A third party beneficiary may enforce a contract made for its benefit. (Civ. Code, § 1559 ['A contract, made *expressly* for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.' (Italics added.)]) However, '[a] putative third party's rights under a contract are predicated upon the contracting parties' intent to benefit' it. (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436 [204 Cal.Rptr. 435, 682 P.2d 1100] (*Garcia*).) Ascertaining this intent is a question of ordinary contract interpretation. (*Ibid.*) Thus, '[t]he circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement.' [Citation.] [¶] Under long-standing contract law, a 'contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' (Civ. Code, § 1636.) Although 'the intention of the parties is to be ascertained from the writing alone, if possible' (*id.,* § 1639), '[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates' (*id.,* § 1647). 'However broad may be the terms of a contract, it extends only to those things . . . which it appears that the parties intended to contract.' (*Id.,* § 1648.)" (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524 [117 Cal.Rptr.2d 220, 41 P.3d 46].)

Here, the language of the instructions did not expressly evince the intent to benefit Donald. The objective of the instructions was to guide completion of the refinance transaction. The context in which the contract at issue was formed was that the Bank was purchasing a policy of title insurance from Fidelity, the objective of which was to protect *the Bank* from the existence of defects in title and unknown encumbrances. In addition, the Bank sought to ensure recordation of a deed of trust as security for Donald's loan—again for the Bank's own protection—from default by Donald. Taking the language of the instructions, viewed in the context of the transaction at issue, we perceive no express intent on the part of the Bank or Fidelity to benefit Donald. We

thus conclude that Donald was not a third party beneficiary of the instruction. The evidence establishes no more than that Donald was an incidental beneficiary of the instruction. As such, he cannot maintain an action for breach of fiduciary duty based on Fidelity's failure to record the Bank's deed in "second position," where he could not maintain an action for breach of contract based on those instructions. We reiterate that "[i]n delimiting the scope of an escrow holder's fiduciary duties, . . . we start from the principle that '[a]n escrow holder must comply strictly with the instructions of the parties' . . . [and] an escrow holder 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' [Citations.] Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions. [Citations.]" (*Summit, supra,* 27 Cal.4th at p. 711.)

Because Donald was not a party to the escrow and did not submit escrow instructions to Fidelity, Fidelity was not acting as his agent with respect to the transaction. There were no instructions submitted by him, or to which he was a signatory, with which Fidelity was obligated to comply, or which it was obligated to carry out with reasonable care in the exercise of ordinary skill and diligence. In addition, the instructions given by the Bank did not contain any direction regarding ascertaining the identity of the trustee of the Kachlon deed of trust, requiring notarized signatures on the request for reconveyance, or disclosing to Donald if the deed was not reconveyed. We will not imply such requirements where they were not part of the instructions submitted by any party, let alone by Donald.

When an escrow holder knows a party to the escrow is relying on it for protection as to facts learned by the escrow holder, the escrow holder can be held liable if it does not disclose those facts to the party. (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 674–675 [86 Cal.Rptr.2d 490].) Having had little or no contact with Donald, who was not a party to the escrow, Fidelity would have had no reason to know or expect that Donald was looking to Fidelity for protection as to facts learned by it. (See *Vournas v. Fidelity Nat. Tit. Ins. Co., supra,* 73 Cal.App.4th at pp. 674–675 [no escrow liability for failure to disclose need for beneficiary consent to trustee's sale of trust property because not part of escrow instructions and no evidence escrow holder knew trustee was unaware of beneficiary consent requirement].)

Donald was not left without recourse. Donald's remedy was to look to the Kachlons as beneficiaries (and to the trustee) based on the duties imposed on

them by section 2941, and he did just that.[7] In addition, our conclusion here does not mean that an escrow holder can do as it pleases with impunity. In the present case, Fidelity owed duties to the Bank, which it apparently breached and for which it could be held liable.

The cases cited by Donald in support of there being any actionable duty on the part of Fidelity as escrow holder are all readily distinguishable in that, in each case, the complaining party had submitted escrow instructions directly to the escrow holder accused of breaching the terms of those instructions. (See *Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618 [30 Cal.Rptr. 821, 381 P.2d 645]; *Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915 [259 Cal.Rptr. 117]; *Bear Creek Planning Com. v. Title Ins. & Trust Co.* (1985) 164 Cal.App.3d 1227 [211 Cal.Rptr. 172]; and *Ruth v. Lytton Sav. & Loan Assn.* (1968) 266 Cal.App.2d 831 [72 Cal.Rptr. 521], opn. mod. 272 Cal.App.2d 24 [76 Cal.Rptr. 926].) That is not the situation here.[8]

Furthermore, we decline to impose a generalized duty of care under these circumstances, where the Legislature has statutorily imposed the duty to record a reconveyance on others, i.e., the trustee and the beneficiary, and has chosen to *not* impose a duty on a party undertaking the role held by Fidelity here. (§ 2941.) In addition, the California Supreme Court has defined the scope of obligations owed by an escrow holder: "Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions. [Citations.]" (*Summit, supra,* 27 Cal.4th at p. 711.)

---

[7] The case against the Kachlons and the trustee, Best Alliance, proceeded to trial and judgment was entered. We note that a related appeal is pending as to that judgment (case No. B182816).

[8] We note that Fidelity's reliance on the case of *Siegel v. Fidelity Nat. Title Ins. Co.* (1996) 46 Cal.App.4th 1181 [54 Cal.Rptr.2d 84] as being controlling is misplaced, although the case is somewhat instructive for our purposes here. In *Siegel,* this court reversed a judgment in favor of homeowners who sued a title insurance company for providing a preliminary title report that failed to disclose a lien recorded against the property. We held that the fact the title insurance company agreed with the escrow company to act as sub-escrow and undertake rudimentary escrow functions, such as paying out funds and recording documents, did not expand its duties or the scope of its agency as to the homeowners, who were not insureds under the title policy. "It did not undertake to prepare or review the escrow documents or ensure that the parties' instructions were carried out. We decline to hold that a third party so engaged thereby becomes the fiduciary of the purchasers *for purposes of searching the records or transmitting informa-tion regarding title.*" (*Id.* at p. 1194, italics added.)

The present situation is distinguishable because Donald is not suing based on Fidelity's performance of its duties in regard to issuing a title insurance policy. We note, however, that our decision in *Siegel* is instructive here to the extent that it recognized that the agency and fiduciary responsibilities owed by the escrow company to the homeowners were limited by the terms of the escrow instructions, and the responsibilities of the title company, acting as sub-escrow, were even more limited. (*Siegel v. Fidelity Nat. Title Ins. Co., supra,* 46 Cal.App.4th at p. 1194.)

## DISPOSITION

The judgment is affirmed.

Epstein, P. J., and Hastings, J.,[*] concurred.

---

[*]Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.