Filed 9/25/20  Kostanian v. Ticor Title Co. of Cal. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| MARINA KOSTANIAN, | B294961 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC587999) |
| TICOR TITLE COMPANY OF CALIFORNIA., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed.

Cliff Dean Schneider, for Plaintiff and Appellant.

Fidelity National Law Group, Kevin R. Broersma, for Defendant and Respondent.

———————————————

Plaintiff and appellant Marina Kostanian appeals the trial court's order granting defendant and appellant Ticor Title Company of California's (Ticor) motion for nonsuit following presentation of Kostanian's case-in-chief.

Kostanian entered into a purchase agreement to sell commercial property, and contacted Ticor to handle escrow. A Ticor agent represented to Kostanian that the buyer had made the initial deposit of $100,000 per the purchase agreement, but the buyer had not. Kostanian declined to accept a subsequent offer to lease the property based on her belief that the deposit had been made and the sale would occur. The buyer never made the deposit and the planned sale fell through. When Kostanian contacted the broker who had presented her with the lease offer, the offer was no longer available.

Kostanian brought suit, alleging that Ticor's misrepresentation deprived her of the opportunity to accept the lease and accompanying profit. The trial court granted nonsuit in Ticor's favor on the bases that (1) Ticor's misrepresentation was not a substantial factor in causing the harm Kostanian alleged as a matter of law, and (2) Kostanian's reliance on Ticor's misrepresentation was unreasonable. Kostanian contends the trial court erred.

We agree with the trial court that Ticor's misrepresentation was not a substantial factor in causing Kostanian's alleged damages as a matter of law, and we affirm the trial court's order granting nonsuit.

2

# FACTS

## *Trial*

On June 26, 2017, Kostanian filed the operative third amended complaint alleging fraudulent misrepresentation against Ticor.[1]  Trial commenced on November 13, 2018. The following evidence was presented to the jury in Kostanian's case-in-chief:

In 2007, Kostanian purchased property located at 5802-5806 Willoughby Avenue, in Los Angeles, California (the property).  She obtained construction loans totaling approximately $2.3 million to demolish the existing structure and build commercial property.  When the construction was completed in 2014, Kostanian's lender required her to either lease or sell the property.  She entered into an exclusive three-month contract with real estate broker John Anthony of the Charles Dunn Company, Inc., and put the property up for sale.

The week prior to expiration of their exclusive contract, Anthony presented Kostanian with an offer from a buyer

---

[1] Kostanian agreed to dismissal of the only other cause of action against Ticor, her fourth cause of action for negligent misrepresentation.

willing to purchase the property for $3.4 million.[2]  Anthony acted as a dual agent, representing both Kostanian and the buyer in the transaction.  On May 13, 2014, Kostanian and the buyer executed a purchase agreement.  Under the terms of the agreement, the buyer was to deposit $100,000 into escrow within two business days of execution of the sales contract.  The buyer was to deposit another $100,000 within five business days of inspection.  At the time Kostanian and the buyer signed the contract, they had not chosen an escrow company to use.

On May 20, Anthony e-mailed Ticor agent Michael Mahoney:  "I need title and escrow quotes for $3.4 flex building I'm opening escrow on today.  Vacant and selling to a user.  Need your best pricing on this deal."

Mahoney responded:  "The escrow fee is a total of $3,375.00 or $1,687.50 each."

Anthony replied:  "Please send me wiring instructions. Thank you."

Anthony selected Ticor as the Escrow Company sometime after Kostanian had entered the purchase agreement with the buyer; Anthony informed Kostanian that escrow had been opened on or shortly after May 20.

---

[2] The original term of the agency agreement was from February 17 to May 18, 2014, but the exclusivity period was automatically extended because Anthony procured a buyer and the sale was in progress at the time that the contract would have expired.

On May 21, Anthony and Mahoney again exchanged e-mails:

Mahoney wrote:  "Attached find wiring instructions per your request.  We will need the amount of your commission and the contact information for the buyer and seller.  We will need to confirm the terms of the note (Interest rate, payment schedule, principal reductions dates).  Thanks."

Anthony responded:  "The Seller financing is at 7% and is interest only.  It is a 12 month term and they are financing $900,000.  $150,000 against the principal is to be paid in 30 days, another $250,000 within 90 days (from origination) and the remaining $500,000 by the end of the 12 month term."

On May 27, Mahoney e-mailed Anthony:  "We have not received the buyers deposit yet."

On May 28, Anthony responded:  "Working on it now.  Please send me the escrow instructions for the Seller.  They also need an estimated closing statements for their lender."

Mahoney responded:  "What is your commission?"

Anthony replied:  "4% to Charles Dunn."

On the same day, Kostanian called Mahoney regarding the documents she was required to provide to her lender.  Mahoney told Kostanian that "you don't have a deposit."

Kostanian was shocked by this news.  She called Anthony to confirm the status of the sale.  She told Anthony that Mahoney had said there was no deposit.  Anthony responded, "'What are you saying?  . . .  What are you talking about?  Mike wouldn't say that.  Call him in ten minutes. . . .

You have a deposit. Call him in ten minutes.'" Anthony told Kostanian that she misunderstood Mahoney, and again stated that she had received a deposit.

Kostanian believed that she had misunderstood Mahoney because English is her second language. She told Anthony she would call Mahoney back, but she did not call Mahoney again that day because she was embarrassed that she misunderstood him.

Later that day, Mahoney e-mailed Anthony: "Attached find sample commission and escrow instructions for your review. Please advise of any changes and/or corrections."

Anthony responded: "Did you tell the Seller that we did not open Escrow?"

Mahoney replied: "I told the seller that we have not received the deposit yet."

The attached draft instructions were dated May 28, 2014, and were printed on Ticor letterhead. The instructions referenced the parties' purchase agreement dated May 9, 2014, and expressly stated that "Escrow Holder is not a party" to that agreement. The escrow instructions stated that they were comprised of the instructions in the draft along with those in the purchase agreement, and that the instructions in the draft controlled in the event of any conflict. The instructions included a provision under a section entitled "Clarification of Duties" that stated: "The agency and duties of Escrow Holder commence only upon receipt of copies of these Escrow Instructions executed by all

6

parties." Finally, the draft instructions included signature blocks for Kostanian and the buyer.

On the next morning, May 29, Mahoney e-mailed Anthony: "If you have had a chance to review the escrow instructions and they are good let me know. The seller needs a copy to send to her existing lender." Anthony never responded to Mahoney's requests to review the draft instructions.

Mahoney then e-mailed Kostanian, carbon-copying Anthony. The e-mail stated, "Per your request attached find copy of the escrow instructions. Please advise of anything further is required." Mahoney attached the executed purchase agreement and the same draft escrow instructions that he sent to Anthony the day before. The draft escrow instructions inaccurately stated: "Buyer(s) have deposited with escrow, receipt of which is hereby acknowledged an initial deposit in the amount of $100,000.00." The instructions had not been executed by either Kostanian or the buyer.

After receiving this email, Kostanian was relieved because she believed the deposit had been made. She called Mahoney to thank him for forwarding the purchase agreement and escrow instructions. During their conversation, Kostanian testified that Mahoney reassured her, stating, "[Y]ou're fine. You have a deposit."[3]

_____

[3] We note, but given the procedural posture of this appeal do not consider, that Mahoney testified to the

7

On June 3, Mahoney e-mailed Anthony to inquire about the buyer's deposit:

Mahoney wrote: "The buyer has not sent us his deposit yet."

Anthony wrote: "When do his contingencies expire?"

Mahoney responded: "Based upon 1.2 of the contract it is 20 days from acceptance. Assuming the seller accepted the agreement when you opened the escrow on the 20th his contingency expires on June 9, 2014. The seller did not date the contract so acceptance is an assumption. The contract also used the date the buyer receives the property information sheet as a starting time for the physical inspection. I am not sure when the buyer received the property information sheet."

Anthony responded: "I have the 10th. We may be switching Buyers. He says that he will be proceeding but is too busy and non-responsive. I will keep you posted."

Mahoney replied: "No problem."

On June 4, Kostanian received an e-mail from real estate broker Elizaveta Kirillova with an offer to lease the property:

Kirillova wrote: "Hi Marina, [¶] If you are still interested to lease your commercial building located at 5608 Willoughby Ave., LA CA 90038, please consider the offer. Potential tenant is the owner of good and reputable

_____

contrary about this conversation: He stated he again told Kostanian that Ticor had not received a deposit from the buyer.

company, looking for art studio space in Los Angeles. Really serious client, ready to move in ASAP with verified assets and excellent credit. She also has 5 other Res, and is a current shareholder of ITOA transportation company in LA. Please let me know regarding your decision in any case."

A commercial lease agreement signed by the prospective tenant, a check for the first month's rent and security deposit, and the credit report of the prospective tenant were attached to the e-mail. Under the terms of the proposed lease, the tenant agreed to pay $24,500 in rent per month for five years.

Kostanian shared the offer with Anthony. He admonished her for entertaining an offer from another broker in contravention of their exclusive agreement. He did not disclose that the buyer he represented had not made the initial $100,000 deposit.

On June 5, Kostanian rejected the lease offer because she believed Ticor had received the buyer's deposit and the sale was going forward.

She e-mailed Kirillova: "Dear Liza, Thank you for your offer. Please be informed that I am in a process to sell my property already. To be honest I would better sell it rather that lease, but I would definitely can keep your offer as a back up offer. In that case I would like to review your client's business and personal Tax return for the last three years."

On June 13, 2014, Kostanian called Mahoney to ask whether the buyer had made the second $100,000 required

by the purchase agreement.  Mahoney told Kostanian that escrow had never been opened and that no deposit had ever been received.  Kostanian asked why Mahoney had sent her the escrow instructions.  Mahoney replied that Anthony had requested that he send the instructions to her and that she should speak with Anthony regarding the matter.

That same day, Mahoney e-mailed Anthony the escrow instructions and purchase and sale agreement, per Anthony's request:

Mahoney wrote:  "Here are the instructions and PSA."

Anthony responded:  "I have advised the Seller to terminate.  The Buyer continues to say the full deposit is being wired.  Clearly he is stalling or a liar.  We have a good back up Buyer waiting."

Mahoney replied:  "Since we never sent anything to the buyer we do not need to cancel the escrow.  The seller is anxious."

Prior to June 13, Anthony did not tell Kostanian that the initial deposit had not been made.

On June 14, Kostanian contacted Kirillova about the lease offer, but the offer was no longer open.

Kostanian eventually sold the property to a different buyer in December for $3,375,000.

***Motion for Nonsuit***

After the close of Kostanian's case-in-chief, Ticor moved for nonsuit pursuant to Civil Code section 581c.

10

At the hearing, Kostanian argued that the court must deny the motion for nonsuit because she had presented evidence to support each of the elements of fraud: misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damage. Ticor did not contest that the escrow instructions Mahoney sent to Kostanian incorrectly stated that the buyer had deposited $100,000, and Kostanian testified that Mahoney verified the deposit had been made in a phone call with her the same day she received the instructions. Both were evidence that Ticor made a false statement to Kostanian. Evidence was presented that Mahoney knew his statement was false— Mahoney testified that he knew the deposit had not been made. Kostanian presented evidence of inducement— Mahoney testified that he was aware Kostanian intended to give the escrow instructions to her lender. Kostanian reasonably relied on the misstatement and declined the lease offer because she believed she was in a transaction. Kostanian's belief in the truth of Mahoney's statement was therefore a substantial factor in causing her harm. Her damages were the loss of the profit she would have made on the $24,500 per month rent that she would have collected under the lease.

Ticor responded that Kostanian's losses should not be attributed to Mahoney's misrepresentation, but instead to the lack of communication between Kostanian and Anthony. As Kostanian's agent, Anthony's knowledge was imputed to Kostanian under Civil Code section 2332. After Mahoney

11

allegedly misrepresented that Ticor had received the deposit, and before Kostanian received the lease offer, Mahoney informed Anthony by e-mail that Ticor had not received a deposit from the buyer. Anthony acknowledged by e-mail the same day that the deposit had not been made. Kostanian could not have suffered harm as a result of the misrepresentation because her agent had been informed and had acknowledged that there was no deposit only 24 hours before Kostanian was presented with the lease offer.

Ticor further argued that it would be unfair to hold it responsible. The deposit was due in mid-May, but was never received despite Mahoney's multiple e-mails alerting Anthony to the problem. It was undisputed that the escrow instructions were never executed, and that the buyer never responded to the wiring instructions. Escrow officers do not owe a duty to either a seller or a buyer until the escrow and wiring instructions have been signed by both parties and the deposit has been received. Neither occurred in this case. Kostanian knew she had not signed the escrow instructions. Ticor was not responsible for the buyer's failure to perform.

Kostanian responded that Mahoney never warned her that the instructions were draft instructions. An escrow agent is an agent of both the buyer and the seller, and as the only person who could verify whether the deposit had been made, it was Mahoney's duty to inform her that the deposit had not been made. If Anthony's knowledge could be imputed to Kostanian, a principal would have no recourse when defrauded if two agents were involved—each could

12

argue that informing the principal was the other agent's responsibility. Civil Code section 2332 has no application when there is fraud by an agent against a principal. Nonsuit was inappropriate because there was a question of fact regarding whether Kostanian had notice that there was no deposit prior to turning down the lease offer.

Ticor argued that Kostanian was conflating the issues. First, Anthony's agency was contractual, whereas the escrow agent was a neutral third party with a limited fiduciary duty to follow the written escrow instructions. The buyer never executed the escrow instructions; therefore Mahoney had no duty as an agent to Kostanian as a matter of law. Second, Kostanian was not left without recourse; she could pursue causes of action against both Anthony and the buyer for breach of contract. A real estate broker is legally obligated to tell his client what he knows regarding the status of escrow. The issue of Ticor's liability was therefore a question of law for the court, not an issue of fact to be resolved by the jury.

### *Trial Court's Ruling*

After reviewing Ticor's written motion and hearing oral argument from counsel, the trial court granted Ticor's motion for nonsuit.

The court found that although there was a factual dispute regarding whether Mahoney confirmed the deposit, it was unreasonable for Kostanian (who was no novice in

13

real estate transactions) or her lender to rely on what were clearly unexecuted draft instructions.

The testimony demonstrated that Anthony was a dual agent, and arguably in a better position to know when the deposit would be made than either Kostanian or Mahoney was, because he would receive the wiring instructions. Moreover, after sending the erroneous escrow instructions, Mahoney again told Anthony that Ticor had not received the buyer's deposit. Kostanian shared the lease offer with Anthony prior to declining it. Anthony was fully aware that there was no deposit at the time, but did not inform his client.

The court found that Mahoney was never engaged in a contract with Kostanian. An escrow agent has no role until the instructions are signed and a deposit is made. Kostanian did not sign and return the draft escrow instructions, and Anthony never reviewed the instructions or otherwise moved the sale forward in his role as dual agent.

The court ruled that (1) as a matter of law, Ticor's conduct could not have been a substantial factor in Kostanian's harm, and (2) Kostanian did not reasonably rely on the escrow instructions because she was fully aware that she had never signed the instructions.

Kostanian timely appealed.

14

# DISCUSSION

## *Legal Principles Relating to Non-Suit of an Action for Fraud*

"A defendant is entitled to nonsuit if the trial court determines as a matter of law that plaintiff's evidence, when viewed most favorably to the plaintiff under the substantial evidence test, is insufficient to permit a jury to find in his favor." (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 713.)

"'On a motion for nonsuit, '"the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . ."' [Citations.] [¶] In an appeal from a judgment of nonsuit, the reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff. 'The judgment of the trial court cannot be sustained unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.'" (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830,

15

838–839.)'" (*Markowitz v. Fidelity Nat. Title Co.* (2006) 142 Cal.App.4th 508, 520 (*Markowitz*).)

"'"The rules governing the granting of a nonsuit, however, do not relieve the plaintiff of the burden of establishing the elements of his case. The plaintiff must therefore produce evidence which supports a logical inference in his favor and which does more than merely permit speculation or conjecture. [Citation.] If a plaintiff produces no substantial evidence of liability or proximate cause then the granting of a nonsuit is proper. [Citation.]" (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402.)' (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1209.)" (*Markowitz, supra,* 142 Cal.App.4th at p. 520.)

Generally, "'"[t]he elements of fraud, which give[ ] rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."' [Citation.]" (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173.)

*Analysis*

Viewing the facts in the light most favorable to Kostanian, and accepting as true her testimony that Mahoney confirmed in their telephone conversation of May 29 that the buyer had made a deposit, we conclude that Ticor

16

is entitled to nonsuit as a matter of law. Mahoney's misstatement that a deposit had been paid was not a substantial factor in causing Kostanian's damages, because Mahoney corrected that misstatement on June 3 when he told Anthony that no deposit had been received. Kostanian is charged with her agent Anthony's knowledge, based on this subsequent information provided by Mahoney, that the buyer had not made the deposit. As a matter of law, Kostanian (through her agent Anthony) knew, at the time she received and declined the lease offer, that the buyer in her sales transaction had failed to pay the $100,000 deposit. Kostanian's earlier, contrary understanding—that a deposit had been made—once corrected, did not result in her declining the lease and suffering damages.

Under California law, "[a]s against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." (Civ. Code, § 2332.) "[T]he doctrine of imputed knowledge [operates] as follows: '. . . The fact that the knowledge acquired by the agent was not actually communicated to the principal, . . . does not prevent operation of the rule. . . . The agent may have been guilty of a breach of duty to his principal, yet the knowledge has the same effect as to third persons as though his duty had been faithfully performed.'" (*Powell v. Goldsmith* (1984) 152 Cal.App.3d 746, 751 (*Powell*), quoting *Columbia Pictures Corp. v. DeToth* (1948) 87 Cal.App.2d 620, 630].) "'[N]otice to an agent in the course

17

of a transaction is constructive notice to the principal, and it will not avail the latter to show that the agent failed to communicate to him what he was told.  [Citation omitted.] This constructive notice, when it exists, is irrebutable. . . .' (*Watson v. Sutro* (1890) 86 Cal. 500, 523.)" (*Powell*, *supra*, at p. 751.)  "[W]here a principal acts through an agent, a third person dealing with such agent is entitled to rely upon his knowledge and notice and it binds the principal." (*Hale v. Depaoli* (1948) 33 Cal.2d 228, 232.)  Such knowledge will be attributed to the principal even if the agent has not communicated it.  (*Santillan v. Roman Catholic Bishop of Fresno* (2008) 163 Cal.App.4th 4, 10–11.)

It is undisputed that Mahoney e-mailed Anthony on June 3 to inform him that Ticor had never received the buyer's deposit, and Anthony acknowledged this information, and its accuracy, in a return e-mail on the same date.  Anthony was Kostanian's exclusive agent in the sales transaction, and advised her regarding whether to proceed with a sale or pursue the lease.  Having disclosed that no deposit had been made by June 3, Mahoney was entitled to rely upon Anthony to relate this important information to Kostanian, and the law imputes Anthony's knowledge to her. The fact that Anthony knew no deposit had been made toward the sale at the time Kostanian discussed the lease offer with him on June 4 is undisputed.  Although Kostanian testified that Anthony did not communicate this information to her prior to June 13, as a matter of law, Kostanian is charged with Anthony's knowledge that the buyer had not

18

made a deposit when she declined the lease offer on June 5. Her constructive knowledge is irrebuttable. Accordingly, Mahoney's earlier misstatement could not have been a substantial factor in causing Kostanian's damages.

Kostanian attempts to circumvent this result by arguing that because she was a party to the escrow, Mahoney was also her agent and had a duty to notify her "directly" that the deposit had not been received. Here, an escrow was never created, because neither party to the purchase agreement had executed the escrow instructions. (*Security-First Nat. Bank of Los Angeles v. Clark* (1935) 8 Cal.App.2d 709, 712 [an escrow is not created until the buyer and seller agree to the terms of the escrow instructions and the escrow company accepts the position of depository].) Indeed, the escrow instructions prepared by Ticor make this legal principle explicit, stating, "The agency and duties of Escrow Holder commence only upon receipt of copies of these Escrow Instructions executed by all parties." Kostanian essentially conceded this point on appeal by contending in oral argument that it was the purchase agreement, not the unsigned instructions, that created the escrow because that purchase agreement indicated Kostanian and the buyer's intent to utilize Ticor's services. But the record evidence indicates Ticor was not brought into the transaction until well after that agreement was signed; and, the instructions prepared by Ticor (which undisputedly remained unsigned) expressly note that it is not a party to the purchase agreement, and would only carry out any of its provisions

19

together with the escrow instructions. Thus, there was not an escrow, and without an escrow, there can be no agency relationship, as "[a]n escrow holder is an agent and fiduciary of the parties to the escrow." (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711 (*Summit Financial Holdings*).)

Even if we were to assume that an escrow had been created in connection with Kostanian's agreement to sell the property to the buyer, thereby transforming Mahoney into an agent and fiduciary of Kostanian, the scope of his duties to her would be limited. "[A]n escrow holder 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' [Citations.]" (*Summit Financial Holdings*, *supra*, 27 Cal.4th at p. 711.) Kostanian points to no provision in the purchase agreement, or in the draft, unexecuted escrow instructions, requiring the escrow holder to notify her directly (as opposed to through her exclusive real estate agent) that a deposit had or had not been made. Mahoney, acting on behalf of Ticor, was entitled to rely on Anthony, as Kostanian's exclusive agent, to communicate all relevant information regarding the transaction to Kostanian, and had no duty to relay such information to her directly.

Finally, we reject Kostanian's contention that imputing Anthony's knowledge to her in these circumstances undermines the purpose of section 2332 to promote equity and prevent fraud. At its core, Kostanian's complaint is that

20

Mahoney told her exclusive real estate agent all of the information needed (i.e., that no deposit had been made), when he should have told her directly. There is no indication that Mahoney knew about or was involved in the decision Kostanian had to make regarding whether to lease or sell her property. Rather, she consulted her real estate agent Anthony on that issue. We see no inequity in applying section 2332 to impute Anthony's knowledge to Kostanian. Due to Mahoney's most recent and unambiguous disclosure to Anthony that there was no deposit (which Anthony acknowledged he understood), Kostanian and Anthony had fully accurate information when discussing her options. We see no inequity in imputing Anthony's knowledge to her, and in finding that Mahoney's prior misstatement was not a substantial factor in causing injury to Kostanian.

## DISPOSITION

The trial court's order granting nonsuit in Ticor's favor is affirmed.  Ticor is awarded its costs on appeal.


MOOR, J.

We concur:



RUBIN, P. J.



BAKER, J.